IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2019 Term

_____

No. 18-0448

_____

FILED
**March 14, 2019**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN RE A.P.-1, A.P.-2, A.P.-3

_____

Appeal from the Circuit Court of Raleigh County
The Honorable Robert A. Burnside, Jr., Judge
Case Nos. 2017-JA-154-B, 2017-JA-155-B, 2017-JA-156-B

VACATED AND REMANDED WITH DIRECTIONS

_____

Submitted: January 15, 2019
Filed: March 14, 2019

Gavin Ward, Esq.
Beckley, West Virginia
Counsel for Petitioner D.P.

Stanley I. Selden, Esq.
Beckley, West Virginia
Guardian ad litem of A.P.-1, A.P.-2,
and A.P.-3

Patrick Morrissey, Esq.
Attorney General
Brandolyn N. Felton-Ernest, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Respondent Department of
Health and Human Resources

Sidney Bell, Esq.
Beckley, West Virginia
Counsel for Respondent J.B.

Sarah F. Smith, Esq.
Public Defender Corporation
Beckley, West Virginia
Counsel for Respondent T.W.

CHIEF JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE WORKMAN concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.      "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety."  Syllabus Point 1, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

2.      "Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review."  Syllabus Point 1, *Appalachian Power Co. v. State Tax Dep't of W. Virginia*, 195 W. Va. 573, 466 S.E.2d 424 (1995).

3.      "In a child abuse and neglect hearing, before a court can begin to make any of the dispositional alternatives under W.Va.Code, 49–6–5, it must hold a hearing under W.Va.Code, 49–6–2, and determine 'whether such child is abused or neglected.'

Such a finding is a prerequisite to further continuation of the case." Syllabus Point 1, *State v. T.C.*, 172 W. Va. 47, 303 S.E.2d 685 (1983).

4. "When no factors and circumstances other than incarceration are raised at a disposition hearing in a child abuse and neglect proceeding with regard to a parent's ability to remedy the condition of abuse and neglect in the near future, the circuit court shall evaluate whether the best interests of a child are served by terminating the rights of the biological parent in light of the evidence before it. This would necessarily include but not be limited to consideration of the nature of the offense for which the parent is incarcerated, the terms of the confinement, and the length of the incarceration in light of the abused or neglected child's best interests and paramount need for permanency, security, stability and continuity." Syllabus Point 3, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

WALKER, Chief Justice:

Petitioner D.P. is serving a lengthy prison sentence for first-degree murder and is ineligible for parole until 2029. He is also father to three minor children: A.P.-1, A.P.-2, and A.P.-3. In April 2018, the Circuit Court of Raleigh County terminated Petitioner's parental rights to the three children, despite concluding three months earlier that Petitioner had not abused or neglected them. Petitioner now challenges the termination of his parental rights. Because our law is clear that a circuit court may not terminate a parent's rights to his child without first finding that the parent abused or neglected his child, we vacate the circuit court's April 2018 order and remand this matter to the circuit court for further proceedings.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On June 12, 2017, the West Virginia Department of Health and Human Resources (DHHR) filed a "Petition for Finding of Abuse and/or Neglect and/or Abandonment" with the Circuit Court of Raleigh County (the Petition) regarding Petitioner's three minor children: A.P.-1, A.P.-2, A.P.-3.[1] In the Petition, DHHR alleged that Petitioner was incarcerated at Mount Olive Correctional Facility, sentenced to life with mercy, and ineligible for parole until 2029. DHHR asked the circuit court to find that Petitioner had abandoned his children and, based upon that finding, terminate his parental

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 256 n.1, 773 S.E.2d 20, 22 n.1 (2015). Because the children share the same initials, we will refer to them as A.P.-1, A.P.-2, and A.P.-3, respectively.

rights to A.P.-1, A.P.-2, and A.P.-3. DHHR did not allege that Petitioner had otherwise neglected or abused the children.[2]

The circuit court held an adjudicatory hearing on October 3, 2017.[3] There, DHHR argued that Petitioner had abandoned his children due to his lengthy incarceration. The circuit court was not convinced, and stated in its October 6, 2017 order that it "was of the opinion that the Department's interpretation of the definition of abandonment was not correct." The circuit court then ordered the guardian ad litem and Petitioner to provide additional authority on that issue.[4]

The adjudication hearing continued on December 12, 2017. Petitioner testified to his ongoing relationship with A.P.-1, A.P.-2, and A.P.-3, stating that he was with them nearly every day before his incarceration in March 2014, and that he had

---

[2] The Petition also contained allegations of abuse against T.W., the children's mother, and factual allegations regarding J.B., a non-offending father to another child of T.W.'s; and E.P., D.P.'s sister, to whom T.W. had granted temporary custody of A.P.-1, A.P.-2, A.P.-3 before the filing of the Petition. The circuit court dismissed E.P. from these proceedings by order entered July 26, 2017. J.B. did not file a brief in Petitioner's appeal. In November 2018, this Court affirmed the circuit court's termination of T.W.'s parental rights to A.P.-1, A.P.-2, and A.P.-3, and another infant not at issue in this appeal. *See In re A.P.-1*, No. 18-0444, 2018 WL 5258859, *5 (W. Va. Oct. 19, 2018).

[3] The Court's October 6, 2017 "Order with Respect to Adjudication of [T.W.] and [D.P.]." refers to the October 3 hearing as a "preliminary hearing."

[4] The circuit court docket shows that the parties did provide additional authority on this issue to the circuit court. Those filings were not made a part of the appendix record, however, and have not been reviewed by this Court.

2

provided for their physical and emotional needs. Petitioner further testified that, since entering prison, he talked to the children by telephone at least twice each week and sent his prison wages to his sister E.P., with whom the children were placed, for their maintenance.

The circuit court again continued the adjudication hearing to January 30, 2018, when the children's mother, T.W., testified and confirmed Petitioner's earlier statements: that he provided emotional and financial support to his children before his 2014 incarceration and that he remained involved in the children's lives through telephone conversations and cards, post-incarceration. Petitioner's sister, E.P., also confirmed that he maintained meaningful contact with A.P.-1, A.P.-2, and A.P.-3 from prison and supported them financially, to the best of his ability. Following argument from the parties, and the State's concession that there was no "factual basis in good faith for the Court to make any finding of abandonment," the circuit court concluded that the facts did not support a finding that Petitioner had abandoned A.P.-1, A.P.-2, and A.P.-3 and adjudication was "not supported and [was] refused."

The circuit court then held a disposition hearing on April 17, 2018. Petitioner's counsel "object[ed] to any type of termination on the record considering that there's been no finding of abuse and neglect," and directed the circuit court to this Court's decision in *State v. T.C.*[5] The guardian ad litem for A.P.-1, A.P.-2, and A.P.-3 presented

---

[5] 172 W. Va. 47, 303 S.E.2d 685 (1983).

3

the opposite view, stating, "[t]he law does not say that because there was no finding of abuse, neglect, or abandonment at the adjudicatory phase that [Petitioner's] parental rights can't be terminated at a dispositional phase.  It's exactly the opposite of that."  Then, the guardian ad litem drew upon this Court's decision in *In re Cecil T.*[6] to assure the circuit court that it could "terminate [Petitioner's] parental rights at a dispositional hearing solely on the basis of him being incarcerated[.]"

Ultimately, the circuit court adopted the guardian ad litem's view, concluding that, although it explicitly found that Petitioner had not abandoned his children at the earlier adjudicatory hearing, it was not precluded from "considering the circumstances of the parties and devising a—or coming to a resolution of the question of disposition in the best interests of the child, or the children."  Relying on *In re Cecil T.*, the court found that "the lengthy incarceration of [D.P.] does support the finding of termination to allow the Department the options to take care of [A.P.-1, A.P.-2, and A.P.-3]."  The court's written order, entered on April 24, 2018, reflected that termination ruling:

> [T]hat [D.P.] has a lengthy prison sentence which includes his ineligibility for parole until March 16, 2029; that the opportunity for contact with his children is clearly limited; that the children's interests control at disposition; that while the Court recognizes [D.P.'s] interests the same are outweighed by the children's interests; <u>In Re: Cecil T</u>[.], . . . controls this matter; and that the children's best interests require termination of [D.P.'s] parental rights.

---

⁶ 228 W. Va. 89, 717 S.E.2d 873 (2011).

4

Petitioner now appeals the circuit court's April 24, 2018 order terminating his parental rights.[7]

## II.    STANDARD OF REVIEW

In abuse and neglect appeals, this Court reviews a circuit court's conclusions of law de novo.[8]  "Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review."[9]  This Court only sets aside a circuit court's factual findings in an abuse and neglect case when those findings are clearly erroneous and not because this Court would have decided the case differently:

> A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.[10]

---

[7] After D.P. filed this appeal, questions arose regarding the paternity of A.P.-3. According to the guardian ad litem, D.P. is A.P.-3's psychological father and not her biological father.  That issue was not presented to the circuit court and falls outside the scope of Petitioner's appeal to this Court.

[8] *See* Syl. Pt. 1, in part, *In Interest of: Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

[9] Syl. Pt. 1, *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 466 S.E.2d 424 (1995).

[10] *See* Syl. Pt. 1, in part, *In Interest of: Tiffany Marie S.*, 196 W. Va. at 223, 470 S.E.2d at 177.

III.   DISCUSSION

Petitioner raises three assignments of error.  We consolidate the first two because they are duplicative.  They are also dispositive of this appeal; thus, we need not address the third.  Petitioner contends that the circuit court erroneously terminated his parental rights at the April 17, 2018 disposition hearing because it did not find, at the earlier adjudicatory hearing, that he had abused, neglected, or abandoned A.P.-1, A.P.-2, or A.P.-3.  Stated differently, Petitioner argues that the circuit court improperly moved forward to the disposition phase of the abuse and neglect proceeding without first making the prerequisite finding that he had, in fact, abused, neglected, or abandoned his children.

DHHR argues that a finding of abuse, neglect, or abandonment at an adjudicatory hearing is not a prerequisite to disposition.  Alternatively, DHHR argues that, although the circuit court did not adjudicate Petitioner as an abusive or neglectful parent, or one who had abandoned his children, it did find that Petitioner had abandoned his children at the disposition hearing and that the children's interest in permanency outweighed Petitioner's interest in retaining his parental rights.  The guardian ad litem adopts the position of DHHR on appeal.  He also renews his argument that our decision, *In Re Cecil T.*,[11] justifies the termination of Petitioner's parental rights at the April 17, 2018

---

[11] 228 W. Va. at 89, 717 S.E.2d at 873.

6

disposition hearing and that the circuit court properly weighed A.P.-1, A.P.-2, and A.P.-3's interests in permanency. We address these arguments in turn, below.

### A.

In November 2018, during the pendency of this appeal, this Court decided *In re K.H.*[12] There, the petitioner-father raised the same issue on appeal that Petitioner now raises: that the "circuit court erroneously terminated his parental rights at a disposition hearing after *previously declining to adjudicate him as an abusive or neglectful parent on the same grounds.*"[13] Because the primary issues in the two cases are identical, we expressly adopt and elaborate upon the reasoning employed in *In re K.H.* to resolve Petitioner's appeal.

As we did in *In re K.H.*, we begin our analysis with West Virginia Code §§ 49-4-601 and 49-4-604 (2015). Section 49-4-601 controls adjudicatory hearings, which are hearings "to determine whether a child has been abused and/or neglected as alleged in [DHHR's] petition[.]"[14] Section 49-4-604 controls disposition hearings, which are hearings

> held after a child has been adjudged to be abused and/or neglected, at which the court reviews the child and family case

---

[12] No. 18-0282, 2018 WL 6016722 (W. Va. Nov. 16, 2018).

[13] *Id.* at *4 (emphasis in original).

[14] W. Va. R. of Pro. for Child Abuse and Neglect 3(a).

7

plan filed by [DHHR] and determines the appropriate disposition of the case and permanency plan for the family.[15]

The adjudicatory hearing required by § 49-4-601 and the disposition hearing required by § 49-4-604 create a "two-stage process [that] is well-recognized in our case law."[16] As we have explained, each stage has a separate purpose:

> The *first* phase culminates in an adjudication of abuse and/or neglect. [*See* section 49-4-601]. The *second* phase is a dispositional one, undertaken to achieve the appropriate permanent placement of a child adjudged to be abused and/or neglected. [*See* section 49-4-604].[17]

The adjectives "first" and "second" are not to be glossed over. As this Court stated in 1983,

> [i]n a child abuse and neglect hearing, *before* a court can begin to make any of the dispositional alternatives under [§ 49-4-604], it must hold a hearing under [§ 49-4-601], and determine "whether such child is abused or neglected." *Such a finding is a prerequisite to further continuation of the case*.[18]

So, if a circuit court answers the initial, adjudicatory question in the negative, "then the petition is dismissed under W.Va.Code, 49–6–5(a)(1) [recodified at W. Va. Code

---

[15] *Id*. at R. 3(i).

[16] *In re K.H.*, 2018 WL 6016722, at *4.

[17] *Id*. at *5–6 (quoting *In Re Beth Ann B.*, 204 W.Va. 424, 427, 513 S.E.3d 472, 475 (1998)) (emphasis added).

[18] Syl. Pt. 1, *State v. T.C. at 47*, 172 W. Va. at 47, 303 S.E.2d at 685 (emphasis added).

8

§ 49-4-604(b)(1)]"[19] and the court may not proceed to consider the disposition options laid out in § 49-4-604(b)(2)–(6). Stated even more plainly, our statutes, cases, and rules instruct that a circuit court may not terminate parental rights at a § 49-4-604 disposition hearing without first finding that the parent abused or neglected the child in question at a § 49-4-601 adjudicatory hearing.[20]

As we recognized in *State v. T.C.* and restated more recently in *In Re K.H.*, jurisdictional and constitutional concerns mandate this two-phase approach:

> [T]he primary purpose of making an initial finding of abuse or neglect is to protect the interest of all parties and *to justify the continued jurisdiction* of the court. The two-stage process supports the constitutional protections afforded to parents in permanent child removal cases—constitutional rights guaranteed by the Due Process Clause of the Fourteenth Amendment. Indeed, with regard to minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions.[21]

Just as in *In re K.H.*, the circuit court in this matter held an adjudicatory hearing on DHHR's allegation that Petitioner had abandoned A.P.-1, A.P.-2, and A.P.-3.[22]

---

[19] *Id*. at 50, 303 S.E.2d at 688.

[20] The circuit court must also observe the additional procedural requirements and safeguards contained in West Virginia Code Chapter 49, Article 4.

[21] *In re K.H.*, 2018 WL 6016722, at *5 (cleaned up).

[22] *Id*.

9

And, as in *In re K.H.*, the circuit court considered the evidence presented and found that Petitioner had not. As a result, the circuit court lacked the continued jurisdiction to then terminate Petitioner's parental rights at the April 17, 2018 disposition hearing. So, we vacate that portion of the circuit court's order of April 24, 2018 purporting to terminate Petitioner's parental rights to A.P.-1, A.P.-2, and A.P.-3.

### B.

DHHR's position—that a finding of abuse and neglect at an adjudicatory hearing is not a prerequisite to disposition—is untenable under the plain language of West Virginia Code §§ 49-4-601 and 49-4-604, as well as Syllabus Point 1 of our decision in *State v. T.C.*, decided more than thirty-five years ago.[23] Similarly, the department's position that the circuit court somehow "carried over" the evidence offered at the adjudicatory hearing to the disposition hearing, and then lawfully adjudged Petitioner to have abandoned A.P.-1, A.P.-2, and A.P.-3. before terminating his parental rights is similarly unavailing.

The circuit court and guardian ad litem's reliance upon *In re Cecil T.* in support of the termination of Petitioner's parental rights requires more consideration. In *In re Cecil T.*, this Court considered the termination of parental rights when incarceration was the only factor or circumstance raised in support of termination at the disposition

---

[23] 172 W. Va. at 47, 303 S.E.2d at 685.

hearing.[24]  We made clear that the circuit court adjudged Cecil T. to be a neglected child[25]

before denying DHHR's motion to terminate his father's parental rights.[26]  DHHR then

appealed the circuit court's disposition decision, not its adjudicatory one, to this Court.[27]

That distinction is vital, and it is reflected in Syllabus Point 3 of *In re Cecil T.*:

> When no factors and circumstances other than
> incarceration are raised at a *disposition hearing* in a child abuse
> and neglect proceeding with regard to a parent's ability to
> remedy the condition of abuse and neglect in the near future,
> the circuit court shall evaluate whether the best interests of a
> child are served by terminating the rights of the biological
> parent in light of the evidence before it. This would necessarily
> include but not be limited to consideration of the nature of the
> offense for which the parent is incarcerated, the terms of the
> confinement, and the length of the incarceration in light of the
> abused or neglected child's best interests and paramount need
> for permanency, security, stability and continuity.[28]

On its face, Syllabus Point 3 of *In re Cecil T.* applies only in the context of a

lawful disposition hearing held after a circuit court makes a finding of abuse or neglect at

the adjudicatory hearing.  Here, the circuit court lacked the continued jurisdiction to

---

[24] *See* Syl. Pt. 3, *In re Cecil T.*, 228 W. Va. at 89, 717 S.E.2d at 873.

[25] *See id.* at 93, 717 S.E.2d at 877.

[26] *Id.* at 94, 717 S.E.2d at 878.

[27] *Id.* ("Appellants maintain that the lower court erred by not terminating the parental rights of Appellee pursuant to West Virginia Code § 49–6–5(a)(6) [now §49-4-604] because the failure to terminate does not provide a meaningful permanency plan for Cecil T., and wrongly places the father's parental rights above that of the best interests of the child.").

[28] *Id.* at 89, 717 S.E.2d at 875.

conduct a disposition hearing once it declined to adjudge Petitioner as having abandoned A.P.-1, A.P.-2, and A.P.-3. For that reason, *In re Cecil T.* could not have applied to Petitioner's case, below, nor could it have justified the termination of Petitioner's parental rights.[29]

We acknowledge the desire of the circuit court, guardian ad litem, and DHHR to achieve permanency for A.P.-1, A.P.-2, and A.P.-3. However, as we explained in *In re K.H.*, that desire may not be fulfilled "by terminating the parental rights of a person who was never adjudicated as abusive or neglectful" and thereby ignoring "well-settled law."[30] Certainly, the parties could have traveled an alternate, procedural route. DHHR could have amended its original abuse and neglect petition to include new allegations that arose following the initial adjudication hearing, if warranted, and the circuit court could have then held another adjudicatory hearing.[31] Had the circuit court then found, for example, A.P.-1, A.P.-2, and A.P.-3 to be neglected children, as that term is defined by West Virginia

---

[29] Circuit courts should be mindful that *In re Cecil T.* does not foreclose a finding at the adjudicatory stage that a parent's absence due to incarceration that harms or threatens the physical or mental health of the child is neglect. West Virginia Code § 49-1-201 (2015) (defining "neglect"). Of course, in order for the circuit court to make the appropriate adjudication, it is incumbent upon DHHR to draft a petition that includes all the necessary allegations and that does not unduly restrict the circuit court's ability to make the requisite finding.

[30] *In re K.H.*, 2018 WL 6016722, at *6.

[31] *See* W. Va. R. of Proc. Child Abuse and Neglect Proceedings 19(b) ("[i]f new allegations arise after the final adjudicatory hearing, the allegations should be included in an amended petition . . . and the final adjudicatory hearing shall be re-opened for the purpose of hearing evidence on the new allegations in the amended petition.").

12

Code § 49-1-201 (2015), it then would have had the jurisdiction to entertain the disposition of Petitioner's parental rights under § 49-4-604. Our insistence on procedural integrity in abuse and neglect cases is not hollow formality. Our statutes, cases, and rules mandate a two-phase approach in abuse and neglect proceedings to "support[] the constitutional protections afforded to parents in permanent child removal cases."[32] Petitioner, although incarcerated, is entitled to no less.

## Conclusion

The circuit court erred by terminating Petitioner's parental rights to A.P.-1, A.P.-2, and A.P.-3 without first adjudicating him as an abusive or neglectful parent. Accordingly, the circuit court lacked the jurisdiction to enter those portions of its April 24, 2018 order purporting to terminate Petitioner's parental rights. For that reason, we hereby vacate the portion of the circuit court's April 24, 2018 order purporting to terminate Petitioner's parental rights to A.P.-1, A.P.-2, and A.P.-3.

We remand the case to the circuit court with instructions to permit DHHR to file an amended abuse and neglect petition, if warranted, alleging any and all claims that it may have against the Petitioner. Then, if necessary, the circuit court shall expeditiously hold an adjudicatory hearing on the newly amended petition and, if the Petitioner is adjudicated as an abusive or neglectful parent, shall hold a disposition hearing. Unless the

---

[32] *In re K.H.*, 2018 WL 6016722 at *5 (internal quotations and citations omitted).

circuit court finds reasons indicating that a change in custody is appropriate, A.P.-1 and A.P.-2 should remain in E.P.'s care pending the outcome of the case. If DHHR does file an amended petition, we then instruct the circuit court to make E.P. a party to the newly amended petition and to appoint her counsel.[33]

Finally, we direct the circuit court to require DHHR to attempt to identify A.P-3's biological father and to take appropriate action given the outcome of those inquiries. Unless the circuit court finds reasons indicating that a change in custody is appropriate, A.P.-3 should remain in E.P.'s care pending the outcome of the DHHR's inquiries.

Vacated and remanded with directions.

---

[33] *See* W. Va. Code § 49-4-601(f) and (h); *State ex rel. H.S. v. Beane*, 240 W. Va. 643, 647–48, 814 S.E.2d 660, 664–65 (2018) ("custodian" in § 49-4-601(h) is one who "held custodial rights to the children prior to the initiation of the abuse and neglect petition").