IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2020 Term

_____

No. 20-0113

_____

IN RE: P.F.

**FILED**
**October 14, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

Appeal from the Circuit Court of Logan County
The Honorable Joshua Butcher, Judge
Civil Action No. 19-JA-77

REVERSED AND REMANDED WITH DIRECTIONS

_____

Submitted: September 15, 2020
Filed: October 14, 2020

Maggie J. Kuhl, Esq.
The Kuhl Law Office
Hurricane, West Virginia
Counsel for Petitioner

Rebecca E. Mick, Esq.
Logan, West Virginia
Guardian ad Litem for the
Infant child, P.F.

Patrick Morrisey, Esq.
Attorney General
S. L. Evans, Esq.
Assistant Attorney General
John M. Masslon, II, Esq.
Assistant Solicitor General
Charleston, West Virginia
Counsel for Respondent
Department of Health and Human
Resources

CHIEF JUSTICE ARMSTEAD delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.       "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard.  We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*."  Syl. Pt. 1, in part, *Napoleon S. v. Walker*, 217 W. Va. 254, 617 S.E.2d 801 (2005).

2.       "Questions relating to . . . custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syl., in part, *Nichols v. Nichols*, 160 W. Va. 514, 236 S.E.2d 36 (1977).

3.       "In . . .  custody matters, we have traditionally held paramount the best interests of the child." Syl. Pt. 5, in part, *Carter v. Carter*, 196 W. Va. 239, 470 S.E.2d 193 (1996).

4.       "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 3, in part, *Alden v. Harpers Ferry Police Civil Serv. Comm'n*, 209 W. Va. 83, 543 S.E.2d 364 (2001).

5.       "Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." Syl. Pt. 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970).

6.     "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951).

7.     "West Virginia Code § [49-4-114(a)(3) (2015)]   provides for grandparent preference in determining adoptive placement for a child where parental rights have been terminated and also incorporates a best interests analysis within that determination by including the requirement that the DHHR find that the grandparents would be suitable adoptive parents prior to granting custody to the grandparents. The statute contemplates that placement with grandparents is presumptively in the best interests of the child, and the preference for grandparent placement may be overcome only where the record reviewed in its entirety establishes that such placement is not in the best interests of the child." Syl. Pt. 4, *Napoleon S. v. Walker*, 217 W. Va. 254, 617 S.E.2d 801 (2005).

8.     "By specifying in West Virginia Code § [49-4-114(a)(3) (2015)] that the home study must show that the grandparents 'would be suitable adoptive parents,' the Legislature has implicitly included the requirement for an analysis by the Department of Health and Human Resources and circuit courts of the best interests of the child, given all circumstances of the case." Syl. Pt. 5, *Napoleon S. v. Walker*, 217 W. Va. 254, 617 S.E.2d 801 (2005).

9.     "Child abuse and neglect cases must be recognized as being among the highest priority for the courts' attention. Unjustified procedural delays wreak havoc on a child's development, stability and security." Syl. Pt. 1, in part, *In the Interest of Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991).

10.    "[M]atters involving the abuse and neglect of children shall take precedence over almost every other matter with which a court deals on a daily basis, and it clearly reflects the goal that such proceedings must be resolved as expeditiously as possible." Syl. Pt. 5, in part, *In the Interest of Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991).

ARMSTEAD, Chief Justice:

Petitioner Grandmother, P.F. ("Grandmother"), appeals the circuit court's January 7, 2020, order denying her motion to intervene in the abuse and neglect proceeding regarding her infant grandchild, P.F. ("child").[1] She argues that the circuit court erred by 1) denying her motion to intervene, 2) denying her request for custody of the child, and 3) failing to provide her with a meaningful opportunity to be heard. Grandmother notes that this Court has held that our grandparent preference statute, W. Va. Code § 49-4-114(a)(3) (2015), "contemplates that placement with grandparents is presumptively in the best interests of the child, and the preference for grandparent placement may be overcome only where the record reviewed in its entirety establishes that such placement is not in the best interests of the child." Syl. Pt. 4, in part, *Napoleon S. v. Walker*, 217 W. Va. 254, 617 S.E.2d 801 (2005). Grandmother asserts that the circuit court's order "is void of any language addressing the best interest of the child."

After review, we conclude that under the specific facts of this case, a remand to the circuit court is necessary for an evidentiary hearing consistent with our ruling herein. The purpose of this evidentiary hearing is for the circuit court to comply with syllabus point four of *Napoleon S.*, and determine whether the preference for grandparent placement is in the child's best interest.

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials to identify the parties. *See, e.g., State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

## I. FACTUAL AND PROCEDURAL BACKGROUND

In May of 2019, the Department of Health and Human Resources ("DHHR") filed an application for emergency custody of the then two-month old child. It appears that the child was living with her mother, M.F. ("Mother"), in the same residence as Grandmother in May of 2019. The allegations set forth in the DHHR's petition for immediate custody of the child are as follows:

> It is being reported that [M.F.] is the mother to [the child]. Also, in the home is the grandmother. It is stated that [Mother] is known to have mental health issues and has had her rights terminated in the past to her other child, thought to be from those mental health concerns. . . . It is stated that [Grandmother] was trying to file a DVPO on [Mother] because of mental health issues and [Mother] making the statements that her and her daughter [sic] eyes were dilated from something not being right in the house, but could not elaborate on what was not right about the house or causing the condition. [Grandmother] thought that [Mother] was making the statement because of her mental health issues or because she could have been under the influence of something.

After the DHHR filed this petition, the child was placed in foster care. On October 8, 2019, Grandmother filed a motion to intervene in which she asserted the following: 1) she is the child's grandmother; 2) she recognized the severity of Mother's issues, including her extensive drug abuse and mental instability; 3) she had an approved DHHR home study; 4) she had experience with adoption and foster children; 5) she is mentally competent and physically capable of taking care of the child; 6) she will protect

2

the child from Mother; 7) she assisted Child Protective Services in locating the child;[2] and 8) she had complied with all requests from the DHHR. Grandmother requested that she be allowed to intervene in this matter, that the child be placed in her custody or, in the alternative, that she receive regular visitation with the child.

The circuit court held a hearing on the motion to intervene on October 17, 2019. This was not an evidentiary hearing. However, counsel for Grandmother proffered that she "has an approved home study through the [DHHR], and has completed both the [DHHR]'s Pre-Service Homefinding Policy Orientation and the Parent Resource for Information, Development and Education classes." The DHHR and the guardian ad litem ("GAL") objected to Grandmother's motion to intervene. Further, the DHHR "objected to placement of [the child] with [Grandmother]."

By order entered on January 7, 2020, the circuit court denied the motion to intervene but ordered Grandmother to have supervised visitation with the child for two hours per week. The circuit court's order also provided that Grandmother "desires both temporary and permanent placement of the subject child, and that she could enjoy preferred status for such request as biological grandparent, the Court directs [DHHR] to consider her

---

[2] While the DHHR's petition for immediate custody of the child provided that Mother and child were living in the same home as Grandmother, it also stated that "[o]n May 24, 2019, the [child] was found at a residence in Boone County . . . and placed in foster care." Grandmother's motion to intervene provided that she "assisted Child Protective Services in locating the subject child when CPS was looking for her." However, the DHHR's brief to this Court provides the child "was located in a residence in Boone County . . . without the assistance" of Grandmother.

3

for temporary placement – to consider both her appropriateness as a care-giver and the adequacy or safety of her home." While the circuit court's order noted that the DHHR and GAL objected to Grandmother's request that the child be placed in her custody, the order does not state the basis for their objections. Regarding placement, the circuit court ordered that "[t]he status quo [i.e. the foster care placement] shall be maintained regarding custody and placement of [the child] until further Order of the Court."

Following entry of the circuit court's order, Grandmother filed the instant appeal.[3]

## II. STANDARD OF REVIEW

This matter originated as an abuse and neglect case filed by the DHHR against the biological parents of the child. According to the DHHR, the parental rights of both biological parents have now been terminated. However, the circuit court's termination of the parents' parental rights is not addressed in this appeal. Instead, the matter before this Court involves Grandmother's attempt to intervene and to be considered as a placement option for the child.

---

[3] Grandmother filed a motion for reconsideration of her motion to intervene on February 3, 2020. The circuit court denied this motion by order entered on February 21, 2020, noting that Grandmother had presented nothing in her request for reconsideration that warranted the granting of relief.

Generally, "[t]his Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." Syl. Pt. 1, *Napoleon S. v. Walker*, 217 W. Va. 254, 617 S.E.2d 801 (internal citation omitted). Additionally, "[q]uestions relating to . . . custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syl., in part, *Nichols v. Nichols*, 160 W. Va. 514, 236 S.E.2d 36 (1977). Further, "[i]n . . . custody matters, we have traditionally held paramount the best interests of the child." Syl. Pt. 5, in part, *Carter v. Carter*, 196 W. Va. 239, 470 S.E.2d 193 (1996).

This case requires us to examine our grandparent preference statute, W. Va. Code § 49-4-114(a)(3). We have held that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 3, *Alden v. Harpers Ferry Police Civil Serv. Comm'n*, 209 W. Va. 83, 543 S.E.2d 364 (2001) (internal citation omitted). Mindful of these applicable standards, we now consider the parties' arguments.

### III. ANALYSIS

This case presents a number of overlapping procedural and substantive concerns regarding our grandparent preference statute, and a party's right to be heard in an abuse and neglect proceeding pursuant to W. Va. Code § 49-4-601(h) (2019). The issues can be placed into two broad categories: 1) Grandmother's ability to participate in the abuse

5

and neglect proceeding, and 2) the application of the grandparent preference statute to the specific facts of this case.[4] Before addressing these two issues, we emphasize that "the best interests of the child is the polar star by which decisions must be made which affect children." *Michael K.T. v. Tina L.T.*, 182 W. Va. 399, 405, 387 S.E.2d 866, 872 (1989) (citation omitted).

The first issue is whether Grandmother had a right to be heard in the abuse and neglect proceeding pursuant to W. Va. Code § 49-4-601(h). It provides:

> (h) Right to be heard. In any proceeding pursuant to this article, the party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses. Foster parents,

---

[4] The GAL argued that this Court lacks jurisdiction in this matter because the circuit court's order denying Grandmother's motion to intervene "is not a final order under the provisions of R. Civ. P. 54(b)." We find no merit to this argument. In *State ex rel. C. H. v. Faircloth*, 240 W. Va. 729, 736-37 n.12, 815 S.E.2d 540, 547-48 n.12 (2018), the Court provided:

> We note that the West Virginia Rules of Civil Procedure regarding intervention generally do not apply to abuse and neglect proceedings under Chapter 49 and therefore are not controlling. *See* W.V.R.C.P. 81(a)(7) ("Only rules 5(b), 5(e), and 80 apply in juvenile proceedings."). Nevertheless, the Rule provides useful guidelines for the issue of intervention, generally.

Additionally, in *Stern v. Chemtall, Inc.*, 217 W. Va. 329, 617 S.E.2d 876 (2005), this Court granted an appeal from a denial of a motion to intervene. *See also* Louis J. Palmer, Jr., and The Hon. Robin Jean Davis, Litigation Handbook on West Virginia Rules of Civil Procedure, Rule 24, § 24[2][e] (5th ed. 2017) ("An order denying intervention is final and immediately appealable.").

preadoptive parents, and relative caregivers shall also have a meaningful opportunity to be heard.

This Court has previously recognized that W. Va. Code § 49-4-601(h) establishes a "two-tiered framework." *State ex rel. R.H. v. Bloom*, No. 17-0002, 2017 WL 1788946, \*3 (W. Va. May 5, 2017) (memorandum decision). In *State ex rel. H.S. v. Beane*, 240 W. Va. 643, 647, 814 S.E.2d 660, 664 (2018), the Court discussed this "two-tiered framework" as follows:

> Parties having "custodial or other parental rights or responsibilities" are entitled to both "a meaningful opportunity to be heard" and "the opportunity to testify and to present and cross-examine witnesses." *See* W. Va. Code § 49-4-601(h). In contrast, however, "[f]oster parents, preadoptive parents, and relative caregivers" are only granted the right to "a meaningful opportunity to be heard."

In the instant case, we find that Grandmother does not fit into any of the categories set forth in W. Va. Code § 49-4-601(h). During oral argument in this matter, counsel for Grandmother conceded that she is not a party having custodial rights or responsibilities which would entitle her to the greater rights set forth in the first sentence of W. Va. Code § 49-4-601(h). She also conceded that Grandmother did not claim to be a "relative caregiver," which would entitle her to the right to "a meaningful opportunity to be heard" set forth in the second sentence of the statute. However, counsel asserted during oral argument that Grandmother could potentially qualify as a "preadoptive parent" and thus be entitled to a "meaningful opportunity to be heard." This assertion was not raised in Grandmother's brief. Further, counsel did not cite, nor have we found, any caselaw or statutory law that supports the argument that a grandparent seeking to intervene in an abuse

7

and neglect matter who has not had prior custody of the child can be considered a "preadoptive parent."[5]

Because Grandmother did not establish that she fit into any of the categories in W. Va. Code § 49-1-601(h), we conclude that the circuit court did not err by denying her a "meaningful opportunity to be heard" under this statute.

The next issue we address is Grandmother's contention that the circuit court erred by denying her request for custody of the child. We acknowledge at the outset that this issue does not fit neatly into an established procedural framework. Viewing the issue narrowly, this is an appeal of the circuit court's order denying Grandmother's motion to intervene in an abuse and neglect proceeding, and the plain language of the the grandparent preference statute does not give a grandparent *the right* to intervene in an abuse and neglect proceeding. Further, when Grandmother sought to intervene in October of 2019, the parents' parental rights had not been terminated, and a placement decision had not been made. However, according to the DHHR's Rule 11(j) update,[6] the parents' parental rights

---

[5] *See State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues which are . . . mentioned only in passing but are not supported with pertinent authority, are not considered on appeal."); *State v. Lilly,* 194 W. Va. 595, 605 n. 16, 461 S.E.2d 101, 111 n. 16 (1995) ("[A]ppellate courts frequently refuse to address issues that appellants . . . fail to develop in their brief.").

[6] Pursuant to Rule 11(j) of the West Virginia Rules of Appellate Procedure, "[t]he parties shall provide a written statement of any change in the circumstances that were set forth in the briefs within one week of any oral argument scheduled by the Court or within such other time as may be specified by order."

have now been terminated, and there is a permanency plan for the child—adoption by the foster family. Moreover, all of the parties to this appeal—Grandmother, the DHHR, and the GAL—have asserted substantive arguments regarding whether placement with Grandmother is in the child's best interest.

Accordingly, it is clear that the child's placement is the primary issue herein. We find that the best interests of the child, including the need to achieve permanency,[7] will best be served by the Court addressing this issue, despite the fact that the order on appeal is the denial of a motion to intervene. With that background in mind, we proceed to examine our grandparent preference statute.

This Court has noted that "[t]he Legislature adopted the so-called 'grandparent preference' to govern the adoption of children whose parents' parental rights have been terminated through abuse and neglect proceedings." *In re Elizabeth F.*, 225 W. Va. 780, 786, 696 S.E.2d 296, 302 (2010). The grandparent preference statute is contained in W. Va. Code § 49-4-114(a)(3).[8] It provides:

---

[7] It is well-established that every child is entitled to permanency to the greatest extent the legal system can ensure it. *See State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 470 S.E.2d 205 (1996). Moreover, "we repeatedly have held in our case law that abuse and neglect proceedings should be resolved as expediently as possible in order to safeguard the well being of the young children at the heart of such proceedings." *In re Emily*, 208 W. Va. 325, 337, 540 S.E.2d 542, 554 (2000).

[8] It is also contained in DHHR internal regulations: "The statute contemplates that placement with grandparents is presumptively in the best interests of the child, and the preference for grandparent placement may be overcome only where the record reviewed in
(continued . . .)

For purposes of any placement of a child for adoption by the department, the department shall first consider the suitability and willingness of any known grandparent or grandparents to adopt the child. Once grandparents who are interested in adopting the child have been identified, the department shall conduct a home study evaluation, including home visits and individual interviews by a licensed social worker. If the department determines, based on the home study evaluation, that the grandparents would be suitable adoptive parents, it shall assure that the grandparents are offered the placement of the child prior to the consideration of any other prospective adoptive parents.

When examining this statute, we are mindful of our rules of statutory interpretation. This Court has held that in deciding the meaning of a statutory provision, "[w]e look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 587, 466 S.E.2d 424, 438 (1995); *see also* Syl. Pt. 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970) ("Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."); and Syl. Pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.").

its entirety establishes that such placement is not in the best interests of the child." *See* West Virginia Department of Health and Human Resources, Adoption Policy § 7.3 (2020).

This Court has addressed the grandparent preference statute on numerous occasions. In *Napoleon S.*, the Court held:

> West Virginia Code § [49-4-114(a)(3)] provides for grandparent preference in determining adoptive placement for a child where parental rights have been terminated and also incorporates a best interests analysis within that determination by including the requirement that the DHHR find that the grandparents would be suitable adoptive parents prior to granting custody to the grandparents. The statute contemplates that placement with grandparents is presumptively in the best interests of the child, and *the preference for grandparent placement may be overcome only where the record reviewed in its entirety establishes that such placement is not in the best interests of the child.*
>
> By specifying in West Virginia Code § [49-4-114(a)(3)] that the home study must show that the grandparents "would be suitable adoptive parents," the Legislature has implicitly included the requirement for an analysis by the Department of Health and Human Resources and circuit courts of the best interests of the child, given all circumstances of the case.

Syl. Pts. 4 & 5, *Napoleon S.*, 217 W. Va. 254, 617 S.E.2d 801 (emphasis added).

We have provided that "[t]he grandparent preference must be considered in conjunction with [this Court's] long standing jurisprudence that the primary goal in cases involving abuse and neglect . . . must be the health and welfare of the children." *In re Hunter H.*, 227 W. Va. 699, 703, 715 S.E.2d 397, 401 (2011) (citation omitted). Additionally, the Court has noted that "[t]he preference is just that—a preference. It is not absolute." *In re K.E.*, 240 W. Va. 220, 225, 809 S.E.2d 531, 536 (2018).

Grandmother argues that the grandparent preference statute, along with her approved home study, should have resulted in the child being placed in her custody.

11

Further, Grandmother argues that under our holding in *Napoleon S.*, placement with a grandparent is presumptively in the best interest of the child, and this preference may only be overcome where the record reviewed in its entirety establishes that such placement is not in the best interest of the child. The circuit court did not make such a finding in its order. In the absence of such a finding, Grandmother asserts that the child should have been placed in her custody.

The DHHR argues that the grandparent preference statute "does not, by itself, . . . provide [Grandmother] with any right and, instead, provides that because she is the child's grandparent that she will be given first consideration in the adoption of her grandchild." While acknowledging that Grandmother had an approved home study, the DHHR stated that it provided numerous updates to the circuit court throughout the abuse and neglect proceedings stating that it had "concerns" about placing the child with Grandmother.[9] Moreover, the DHHR asserts that Grandmother has other means of enforcing her rights under the grandparent preference statute.[10]

The GAL asserts numerous factual reasons why it is not in the child's best interest to be placed with Grandmother, including: 1) Grandmother lost custody of a child in a prior abuse and neglect case; 2) an allegation that Grandmother and the child's mother

---

[9] These updates do not provide specific details describing the "concerns" the DHHR had about Grandmother.

[10] The DHHR stated that Grandmother could file writs of prohibition and/or mandamus if she believes the grandparent preference statute is not being considered.

12

had a physical altercation in the child's presence; and 3) concerns raised by CPS workers in a prior abuse and neglect case. While acknowledging that Grandmother had previously received an approved home study, the GAL asserts that Grandmother could not currently pass a home study because her husband, a convicted felon who was recently released from incarceration, is now living in Grandmother's home.[11]

Upon review, we find that the grandparent preference statute provides that adoption by a grandparent is presumptively in the child's best interest. Under our holding in syllabus point four of *Napoleon S.*, this presumption may only be overcome when the record reviewed in its entirety demonstrates that placement with a grandparent is not in the child's best interest. In this matter, Grandmother has an approved home study. However, the DHHR and the GAL objected to placement with her, both during the proceedings below and before this Court. The GAL spends considerable time arguing facts that are not in the record before this Court, and we have no way to meaningfully assess these arguments. Similarly, the Court has received conflicting arguments on whether Grandmother's husband now lives in her residence. Again, we have no meaningful way to resolve these conflicting arguments. We note that Grandmother has not had an opportunity to respond

---

[11] The DHHR provided this Court with a Rule 10(i) update regarding this issue. This update provides that Grandmother's husband's parole officer "said she understands that sometimes [Grandmother and her husband] live together and sometimes they live apart." During oral argument, counsel for Grandmother indicated that it was her understanding that Grandmother's husband has his own separate residence.

13

to the issues raised by the GAL, nor did Grandmother have a chance to contest any of the "concerns" the DHHR expressed to the circuit court about placing the child in her custody.

Therefore, under the specific facts of this case, we find that the most efficient way to resolve this matter is a remand to the circuit court with directions for it to hold an evidentiary hearing in which Grandmother, as well as the DHHR and the GAL, are allowed to fully participate and address whether placement with Grandmother is in the child's best interest.[12] Such a hearing is necessary for the circuit court to make the mandatory findings set forth by this Court in syllabus point four of *Napoleon S.*—whether the preference for grandparent placement has been overcome when reviewing the record in its entirety. As in all cases involving children, the polar star is the best interests of the child. "[A] crucial component of the grandparent preference is that the adoptive placement of the subject child with his/her grandparents must serve the child's best interests. Absent such a finding, adoptive placement with the child's grandparents is not proper." *In re Elizabeth F.*, 225 W. Va. at 786, 696 S.E.2d at 302. Adoption by a child's grandparents is permitted only if such adoptive placement serves the child's best interests based upon a thorough review of the entire record. *See In re Aaron H.*, 229 W.Va. 677, 735 S.E.2d 274 (2012).

We emphasize that our ruling in this case does not mandate that every grandparent seeking custody of a child pursuant to the grandparent preference statute is entitled to an evidentiary hearing. However, an evidentiary hearing is necessary in this

---

[12] The circuit court may also permit the foster parents to participate in this hearing.

matter because Grandmother had an approved home study, but was denied placement of the child with no explanation as to why the grandparent preference had been overcome.[13]

Finally, we urge the circuit court, and all of the parties herein, to conclude the evidentiary hearing and the child's ultimate placement as quickly and expeditiously as possible. We have held that "[c]hild abuse and neglect cases must be recognized as being among the highest priority for the courts' attention. Unjustified procedural delays wreak havoc on a child's development, stability and security." Syl. Pt. 1, in part, *In the Interest of Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991). We have also recognized "matters involving the abuse and neglect of children shall take precedence over almost every other matter with which a court deals on a daily basis, and it clearly reflects the goal that such proceedings must be resolved as expeditiously as possible." Syl. Pt. 5, in part, *Carlita B.*

---

[13] While the grandparent preference statute does not mandate that every grandparent asserting the preference is entitled to an evidentiary hearing, this Court regularly reviews cases involving this issue in which the grandparent has been permitted to testify. In a recent case, *In re J.P.*, —— W. Va. ——, 844 S.E.2d 165, 172 (2020), the Court considered a circuit court's order placing a child with the foster parents, rather than the child's grandfather. The circuit court arrived at its ruling after allowing the grandfather to intervene and testify at an evidentiary hearing. *See also In re L.M.*, 235 W. Va. 436, 774 S.E.2d 517 (2015) (the circuit court held a placement hearing and allowed both grandparents who sought placement to testify, as well as hearing testimony from the DHHR); *In re Aaron H.*, 229 W. Va. 677, 735 S.E.2d 274 (the circuit court held a placement hearing and heard testimony from the foster parents, and a grandparent arguing for placement based on the grandparent preference statute); *In re Hunter H.*, 227 W. Va. 699, 715 S.E.2d 397 (2011) (the circuit court held a placement hearing and allowed both the foster parents and the grandparent to testify).

15

To facilitate the commencement and conclusion of the remand proceedings, we issue the mandate of the Court contemporaneously with the issuance of this opinion.

## IV. CONCLUSION

We reverse the circuit court's January 7, 2020, order.  This case is remanded for further proceedings on an expedited basis consistent with this opinion. The mandate of the Court shall issue forthwith.

Reversed and Remanded With Directions.