**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **A.B. and B.B.-1**

**No. 20-0647** (Kanawha County 19-JA-236 and 19-JA-237)

**MEMORANDUM DECISION**

Petitioner Grandmother B.B.-2, by counsel Brendan Wood, appeals the Circuit Court of Kanawha County's August 10, 2020, order denying her motion to intervene and motion for custody of the children.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), J. Rudy Martin, filed a response on behalf of the children in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in (1) denying her motion to intervene, (2) denying her a meaningful opportunity to be heard on that motion, (3) discriminating against her by refusing to consider her for placement of the children based upon her legal use of a prescribed medication, and (4) failing to offer her services that were provided to other parties.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2019, the DHHR filed a child abuse and neglect petition involving seven children and several sets of parents and guardians. Two of the children named in the petition were A.B. and B.B.-1, as were their biological parents. Petitioner, the paternal grandmother of A.B. and B.B.-1, was not a party to the case. At the preliminary hearing, a Child Protective Services ("CPS")

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, they will be referred to as B.B.-1 and B.B.-2, respectively, throughout the memorandum decision.

caseworker testified that the children's various grandmothers cared for the children. Petitioner moved to intervene and, based upon evidence presented at the preliminary hearing, the circuit court ordered the DHHR to amend the petition and to add petitioner as a named party. Later that month, the DHHR filed a second amended petition naming petitioner as a party and alleging that she was using Subutex for her opiate addiction and was an alcoholic. The DHHR noted that petitioner did not seek treatment in West Virginia but traveled to Washington, D.C., on a monthly basis to obtain her Subutex prescription. The DHHR alleged that petitioner failed to participate in any therapy or classes to combat her addiction.

In May of 2019, the circuit court held a preliminary hearing on the second amended petition wherein counsel for petitioner advised the circuit court that petitioner never had custody of the children and lacked standing in the matter. Upon further inquiry, the circuit court found no basis to keep petitioner as a party in the matter and dismissed her from the proceedings. Following this hearing, the circuit court terminated the mother's parental rights in July of 2019 and later terminated the father's parental rights as well.

Petitioner filed a second motion to intervene and requested custody of the children in February of 2020. In support of her motion, petitioner stated that she is the grandmother of the children; that she was previously a party to the matter but was dismissed because she did not have custody of the children at the time the petition was filed; that prior to filing her motion, she played a significant role in the care, custody, and upbringing of the children and had a substantial history of supporting the children by purchasing food, clothing, diapers and medications; she moved into the children's parents' home in order to assist in raising the children; she had a close and loving relationship with the children, especially the elder one, and the children were familiar and comfortable with her; that the parental rights of the children's parents had been terminated; that she had repeatedly requested that the DHHR place the children with her and begin the process through which she might adopt the children; that the DHHR refused to honor her requests and failed to present evidence that she should be precluded as a custodial grandparent or adoptive parent; that she was fully capable of caring for and supporting the children and had no prior history that would preclude her from being considered as a proper and safe placement; and she sought to establish a safe and normal environment for the children that was not disruptive to their lives and that offered continuity and familiarity.

In April of 2020, the circuit court held a placement review hearing. At the hearing, the circuit court considered petitioner's request for visitation with, and custody of, the children. At the hearing, a DHHR worker testified that A.B. and B.B.-1 were placed in a specialized foster home in November of 2019, where they remained. The DHHR worker also testified that the adoption of the children was placed on hold pending petitioner's second motion to intervene. The DHHR worker testified that the DHHR objected to petitioner's motion to intervene because petitioner was previously named as a party in the proceedings, had allegations of abuse and neglect against her, and then moved to be removed from the proceedings before she could face adjudication. The DHHR worker testified that petitioner was then not considered for placement of the children because she relinquished her rights to the children when she was dismissed from the proceedings. Finally, the DHHR worker testified that the children were placed with a foster family in another county because various family members were showing up at the children's school to visit with the children, despite a no contact order. The guardian also joined the DHHR in objecting to petitioner's

motion to intervene. After the hearing, the circuit court ordered that the children remain in their foster placement. The court further ordered that petitioner not be allowed any visitation with the children until a hearing was held on her pending second motion to intervene.

The circuit court held a hearing on petitioner's second motion to intervene in August of 2020. The DHHR and the guardian renewed their objection to petitioner's motion to intervene. A DHHR caseworker testified and recounted the allegations in the amended petition against petitioner. Although petitioner was never adjudicated because she moved to withdraw from the proceedings, the caseworker testified that petitioner was intoxicated when she was served with the second amended petition, and that petitioner admitted to a DHHR investigator that she was using Subutex and had an alcohol addiction. The caseworker also raised concerns that petitioner was a close friend of the children's other family members who were subject to a no contact order issued by the circuit court. Specifically, the caseworker testified that petitioner allowed the children's father into her home. Additionally, the caseworker testified that the DHHR had been investigating the family for various abuse and neglect allegations since 2008. The caseworker testified that petitioner had previously attended other family members' abuse and neglect hearings as well, including family members who were now subject to a no contact order. As a result, the DHHR noted its fears that petitioner would not honor the no contact order if she had custody of the children. Finally, the DHHR argued that it would not be in the children's best interest to place them with petitioner, as they were experiencing stability in their current placement. Petitioner testified to many of the allegations made in her written motion to intervene, including that she cared for and raised the children prior to the proceedings and wished to adopt them. Petitioner also presented her sponsor from her recovery program who testified on her behalf. However, the circuit court determined that her sponsor was not a counselor, lacked first-hand knowledge of petitioner's circumstances, and that her testimony was "not useful or helpful."

Ultimately, the circuit court denied petitioner's motion to intervene based upon its finding that petitioner's testimony was inconsistent with her prior claim that she never had custody of the children and lacked standing in the matter. The circuit court also found that she slept on her rights following her dismissal from the proceedings, that it was not in the children's best interests to delay permanency, and that any such delay would not be reasonable, fair, or appropriate for the children. The circuit court denied petitioner's motion to intervene and her request for placement of the children in her home in its August 10, 2020, order.[2] Petitioner appeals this order denying her motion to intervene.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there

_____

[2]According to respondents, the permanency plan for the children is adoption in their foster home.

is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her motion to intervene. In support, petitioner contends that she is the grandmother of the children and, as such, was entitled to preferred placement of the children. Petitioner further argues that the DHHR failed to perform its statutory duty to determine the appropriateness of placing the children with her. Specifically, petitioner asserts that, pursuant to West Virginia Code § 49-4-114, the DHHR was required to perform a home study. Based on these assertions, petitioner claims that she should have been permitted to intervene. We do not find petitioner's arguments to be persuasive.

On this issue, we have previously held that

[w]hile the grandparent preference statute[3] . . . places a mandatory duty on the West Virginia Department of Health and Human Resources to complete a home study before a child may be placed for adoption with an interested grandparent, "the department shall first consider the [grandparent's] suitability and willingness . . . to adopt the child." There is no statutory requirement that a home study be completed in the event that the interested grandparent is found to be an unsuitable adoptive placement and that placement with such grandparent is not in the best interests of the child.

Syl. Pt. 10, *In re L.M.*, 235 W. Va. 436, 774 S.E.2d 517 (2015) (footnote added). In discussing the grandparent preference, set forth above, this Court has noted that "[t]he preference is just that—a preference. It is not absolute . . . the child's best interest remains paramount." *In re K.E.,* 240 W. Va. 220, 225, 809 S.E.2d 531, 536 (2018). Simply stated, "[t]he grandparent preference must be considered in conjunction with our long standing jurisprudence that 'the primary goal in cases

---

[3]West Virginia Code § 49-4-114(a)(3), the grandparent preference statute, provides as follows:

For purposes of any placement of a child for adoption by the department, the department shall first consider the suitability and willingness of any known grandparent or grandparents to adopt the child. Once grandparents who are interested in adopting the child have been identified, the department shall conduct a home study evaluation, including home visits and individual interviews by a licensed social worker. If the department determines, based on the home study evaluation, that the grandparents would be suitable adoptive parents, it shall assure that the grandparents are offered the placement of the child prior to the consideration of any other prospective adoptive parents.

involving abuse and neglect . . . must be the health and welfare of the children.'" *In re Hunter H.*, 227 W. Va. 699, 703, 715 S.E.2d 397, 401 (2011) (quoting syl. pt. 3, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996)).

Here, the record indicates that petitioner first moved to intervene in the proceedings in April of 2019. As a result of testimony indicating that petitioner had custody of or cared for the children, the DHHR filed an amended petition against petitioner, naming her as a party and lodging allegations of abuse and neglect against her. Specifically, the DHHR alleged that petitioner was abusing alcohol and was using Suboxone. However, the next month, petitioner moved to be dismissed from the proceedings, saying she never had custody of the children and did not have standing in the matter. As a result of her dismissal from the proceedings, petitioner was never adjudicated on the allegations of abuse and neglect, including her alcohol abuse. However, evidence was later introduced that indicated petitioner was intoxicated when she was served with the amended abuse and neglect petition. Several more months passed before petitioner—after asking to be removed from the proceedings on the ground that she never had custody of the children—filed a second motion to intervene in the proceedings. By that time, both children had been in foster care for nearly a year and had bonded with their foster parents. After petitioner filed her second motion to intervene, the DHHR alleged at multiple hearings that petitioner often allowed the children's parents, drug abusers whose parental rights were terminated, to visit the children in her home while the parents were intoxicated. The circuit court ultimately denied petitioner's second motion to intervene, finding that her statements in that motion were inconsistent with her prior testimony that she never had custody of the children. On appeal, we decline to disturb the court's credibility determination with regard to this testimony. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). The circuit court also found that allowing petitioner to intervene could delay the proceedings and that such a delay was not reasonable, fair, or appropriate for the children.

Further, petitioner's argument regarding the DHHR's failure to conduct a home study is unavailing given that the DHHR considered placement of the children with petitioner but found her home to be unsuitable. As noted above, the DHHR is absolved of its statutory duty to perform a home study if it finds the grandparent is unfit and placement in the home is not in the child's best interests. *In re L.M.*, 235 W. Va. at 438, 774 S.E.2d at 520, syl. pt. 10, in part. Here, the evidence established both of these factors, making a home study unnecessary. Petitioner's argument also ignores the fact that the DHHR introduced evidence of her alcoholism, including her admission to a DHHR investigator upon being served with the amended petition that she suffered from alcoholism. Simply put, petitioner's substance abuse rendered her unfit to parent the children. This fact is apparent from the record despite petitioner having purposely avoided adjudication upon this condition by obtaining dismissal from the proceedings before later attempting to intervene once adjudication had closed. Further, given that several of the children's family members who were subject to no contact orders with the children attempted to visit them at school, coupled with the evidence of petitioner's continued exposure of the children to their father, it is clear that the DHHR's concerns that the children would continue to be exposed to these individuals while in petitioner's care were valid. Also, due to the conflicts within petitioner's family and the domestic violence between the children's parents, the DHHR did not believe that petitioner would be able

to protect the children. As such, it is clear that petitioner's home clearly was not suitable for the children, and, therefore, the circuit court did not abuse its discretion by not ordering the DHHR to conduct a home study.

Contrary to her assertions on appeal, petitioner's involvement in the proceedings was governed by West Virginia Code § 49-4-601(h), which establishes a "two-tiered framework" of the parties who enjoy the procedural due process right of a meaningful opportunity to be heard. *State ex rel. H.S. v. Beane*, 240 W. Va. 643, 647, 814 S.E.2d 660, 664 (2018). Specifically, parties having "custodial or other parental rights or responsibilities" are entitled to *both* "a meaningful opportunity to be heard" *and* "the opportunity to testify and to present and cross-examine witnesses." W. Va. Code § 49-4-601(h). Further, we have explained that "[a] person 'who obtains physical custody *after* the initiation of abuse and neglect proceedings—such as a foster parent— does not enjoy the same statutory right of participation as is extended to parents and pre-petition custodians.'" *Beane*, 240 W. Va. at 648, 814 S.E.2d at 665 (quoting *State ex rel. R.H. v. Bloom*, No. 17-0002, 2017 WL 1788946 at *3 (W. Va. May 5, 2017)(memorandum decision)) (emphasis added). These individuals—foster parents, pre-adoptive parents, and relative caregivers—are entitled to a meaningful opportunity to be heard only and are not entitled to an opportunity to testify and to present and cross-examine witnesses. W. Va. Code § 49-4-601(h).

Notably, petitioner cannot be classified as any of those individuals listed above who are entitled to participation rights in a child abuse and neglect case. Here, petitioner unequivocally claimed that she never had custody of the children when she sought dismissal from the proceedings in support of her first motion to intervene. Therefore, it is disingenuous on appeal, as it was below, for petitioner to argue in support of her second motion to intervene that she did exercise custody over the children.[4] More importantly, petitioner suffered no prejudice because the circuit court carefully considered her motions to intervene in the proceedings and conducted multiple evidentiary hearings regarding the children's placement and permanency. Further, the circuit court conducted a hearing on petitioner's second motion to intervene, where she presented witnesses and testimony. Petitioner does not contest the fact that she was given notice of the hearings and the opportunity to be heard and to present testimony at these hearings. Further, by providing petitioner with a meaningful opportunity to be heard, the circuit court complied with West Virginia Code § 49-4-601(h) and our holding in *Beane*, despite the fact that petitioner did not qualify as

---

[4]On appeal, petitioner makes a passing reference to being considered as a "relative caregiver" entitling her to procedural due process under West Virginia Code § 49-4-601(h). However, petitioner fails to cite to West Virginia Code § 49-1-204, the statute that defines this term, or to otherwise apply that definition to the facts of her case. More importantly, petitioner did not raise this issue below. To the contrary, in support of her request to be dismissed from the proceedings, petitioner affirmatively declared that she lacked standing to be named in the petition, thereby waiving this issue on appeal. *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009) ("'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n.20, 524 S.E.2d 688, 704 n.20 (1999)."). Accordingly, because petitioner failed to raise these arguments below, we will not consider her claim that she was a relative caregiver on appeal.

someone who had custodial or other parental rights to the children. Therefore, the circuit court did not err in denying petitioner placement of the children on this ground.

Further, petitioner argues that the circuit court erred in discriminating against her by refusing to consider her for placement of the children based upon her legal use of a prescribed medication. Specifically, petitioner contends that the circuit court erroneously discriminated against her in violation of West Virginia Code § 49-4-604(f), which provides that a circuit court

> may not terminate the parental rights of a parent on the sole basis that the parent is participating in a medication-assisted treatment program, as regulated in § 16-5Y-1 *et seq.*, for substance use disorder, as long as the parent is successfully fulfilling his or her treatment obligations in the medication-assisted treatment program.

Petitioner argues that the circuit court erroneously relied upon her Subutex use as a reason to "find her incapable of being an appropriate grandparent." Having reviewed the record, we find that petitioner is entitled to no relief.

At the outset, we note that the circuit court did not violate West Virginia Code § 49-4-604(f) which, as noted above, provides that a circuit court may not terminate a parent's parental rights "on the *sole basis that the parent is participating in a medication-assisted treatment program.*" Here, the circuit court did not deny petitioner's motion to intervene or her request for placement of the children in her home on the sole basis that she was participating in a Subutex program. Rather, the court found that petitioner's testimony in support of her second motion to intervene was inconsistent with her previous testimony that she never exercised custody of the children when she first moved the court to be dismissed from the matter. Further, the record shows that several other issues, such as concerns over petitioner's ongoing association with individuals who committed domestic violence or whose parental rights were previously terminated, and petitioner's alcoholism jeopardized the children's safety in her care and precluded her from being awarded custody. As such, it is clear that the circuit court had an acceptable basis upon which to find that placement of the children in petitioner's care was contrary to their best interests. We decline to disturb that finding on appeal. With that said, we remind the circuit courts of our previous holdings that "[t]his Court expressly disapproves of any bias against medication-assisted treatment for substance abuse." *In re: D.J. and L.J.*, No. 19-0388, 2020 WL 3259627 (June 16, 2020)(memorandum decision). Further, "the use of medication-assisted treatment is authorized by the Medication-Assisted Treatment Program Licensing Act, West Virginia Code §§ 16-5Y-1 to 16-5Y-13, and the Act's supporting regulations." While, "[m]edication-assisted treatment will not be appropriate or beneficial for all persons suffering from opioid use disorder, "when medication-assisted treatment is appropriate and potentially beneficial, any bias against its use is contrary to the public policy of this State as announced by the Legislature." *In re M.M., H.M., and W.M.*, -- W. Va. --, 853 S.E.2d 556 (2020).

Finally, petitioner argues that the circuit court erred in failing to provide her "the same services it is legally obligated to provide to any grandparent who requests visitation, custody or consideration for adoption." Petitioner compares her provision of services with the children's maternal grandmother, who she argues was given months to "produce drug screens and comply with court directives." By contrast, petitioner argues that she was not offered any services and that

the circuit court discriminated against her because she is in recovery for a substance abuse disorder. Upon our review, we find no error.

At the outset, we note that petitioner cites to no authority to support her assertion that the circuit court was obligated to provide her services of any kind. On the contrary, according to West Virginia Code §§ 49-4-601(d) and 604(c)(6)(C)(iii) and (iv), the DHHR is required to make reasonable efforts to prevent the child's removal from the home, return the child to the home, or otherwise remedy circumstances that are detrimental to the child. None of these situations are applicable to petitioner. Further, if petitioner had remained in the proceedings as a named respondent, West Virginia Code § 49-4-610(2)(B) would have allowed the circuit court to grant services to her through various means, such as a post-adjudicatory improvement period, if she had "demonstrate[d], by clear and convincing evidence, that [she was] likely to fully participate in the improvement period." However, petitioner foreclosed the possibility of an improvement period, and the provision of services, through her affirmative decision to move for dismissal from the proceedings on the ground that she never had custody of the children.

Although the circuit court ultimately found that petitioner was unlikely to fully participate in the provision of services, the fact remains that this finding was unnecessary because neither the DHHR nor the circuit court were under any obligation to provide services to petitioner. As such, petitioner's argument that the DHHR failed to offer to help her with her substance abuse problem is without merit. Further, even if petitioner had been entitled to some services, the circuit court found that petitioner was unlikely to fully participate, in large part, because she asked to be dismissed from the proceedings. While petitioner later moved to intervene in the proceedings a second time, the circuit court found her arguments to be inconsistent with those she proffered to the court only months prior. As a result, we find that the circuit court did not err in failing to offer petitioner services to remedy the conditions of abuse and neglect.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 10, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: June 22, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton