IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2018 Term

FILED
**May 30, 2018**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 18-0208

STATE OF WEST VIRGINIA EX REL. H.S. AND J.S.,
Petitioners

v.

THE HONORABLE J.D. BEANE, JUDGE OF THE CIRCUIT
COURT OF WOOD COUNTY; THE WEST VIRGINIA DEPARTMENT
OF HEALTH AND HUMAN RESOURCES; AND T.B. AND A.C.,
Respondents

WRIT OF PROHIBITION GRANTED

Submitted: April 25, 2018
Filed: May 30, 2018

Jeffrey B. Reed, Esq.
Parkersburg, West Virginia
Counsel for Petitioners H.S. and J.S.

Patrick Morrisey, Esq.
Attorney General
Charleston, West Virginia
Chaelyn W. Casteel, Esq.
Assistant Attorney General
Fairmont, West Virginia
Counsel for Respondent DHHR

Jessica E. Myers, Esq.
Myers Law Offices
Parkersburg, West Virginia
Counsel for Respondents T.B. and A.C.

Courtney L. Ahlborn, Esq.
Parkersburg, West Virginia
Guardian ad Litem

JUSTICE LOUGHRY delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.  "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression.  These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue.  Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight."  Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996).

2.  "The word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the legislature, should be afforded a mandatory connotation."  Syl. Pt. 2, *Terry v. Sencindiver*, 153 W.Va. 651, 171 S.E.2d 480 (1969).

i

LOUGHRY, Justice:

The petitioners H.S. and J.S., who are the long-time foster and designated preadoptive parents of the minor child T.C., seek a writ of prohibition to prevent the enforcement of the January 9, 2018, order of the Circuit Court of Wood County in an ongoing abuse and neglect proceeding.[1] This order granted visitation with the child to respondents T.B. and A.C., who are the child's paternal grandmother and paternal aunt, respectively.[2] The petitioners contend that the circuit court granted the visitation without affording them notice or a meaningful opportunity to be heard, as required by law. After reviewing the parties' arguments, the appendix record, and the pertinent law, we grant the writ of prohibition.[3]

---

[1]Because this case involves a child and sensitive matters, we follow our practice of using initials to refer to the child and the parties. *See* W.Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W.Va. 641, 645 n. 1, 398 S.E.2d 123, 127 n. 1 (1990).

[2]Although the Department of Health and Human Resources and the child's guardian ad litem are nominally respondents in this case, they appear in support of the petitioners. Thus, for ease of discussion, we refer only to T.B. and A.C. as "the respondents" herein.

[3]The petitioners also raised a second, unrelated issue, but we grant prohibition relief only upon the issue of lack of notice and opportunity to be heard.

1

## I. Factual and Procedural Background

The child, T.C., was born in March 2013. In December 2014, the Department of Health and Human Resources ("DHHR") filed an abuse and neglect petition against the child's biological parents.[4] As a result, the child was removed from the home and temporarily placed with the paternal grandmother, respondent T.B. However, the guardian ad litem explains that T.B. allowed the father to have contact with T.C. in contravention of the DHHR's instructions, so the child was subsequently moved to the petitioners' home. The petitioners, who are T.C.'s maternal aunt and uncle, have cared for T.C. since April 2015 and wish to adopt him.

Both biological parents stipulated to adjudications of abuse and, ultimately, they both failed to complete post-adjudicatory improvement periods. The mother's parental rights were terminated on November 17, 2016, and she did not appeal. The father's parental rights were terminated on August 15, 2017, and he filed a petition for appeal with this Court on October 24, 2017. The multidisciplinary treatment team has proposed a permanency plan for the child of adoption by the petitioners, and permanent placement review hearings have been held in furtherance of this plan.

---

[4]The abuse involved domestic violence and allowing the child to reside with one or more persons whose rights to other children were previously terminated for abuse and neglect.

On October 27, 2017, during the pendency of the father's appeal, the respondents filed a motion to intervene and motion for custody of T.C. with the circuit court. Respondent T.B. sought grandparent visitation, while respondent A.C. sought permanent custody. They also sought visitation with the child pending further proceedings. This motion was not served upon the petitioners, and no one notified the petitioners of either the motion or the circuit court's January 2, 2018, evidentiary hearing to address the motion. During this hearing, the respondents testified and the court admitted photographs of the child into evidence.[5] Over the DHHR's and guardian ad litem's objections, the circuit court ordered that the respondents would receive supervised visitation with the child once every two weeks for two hours. The respondents' requests to intervene and for custody were taken under advisement. These rulings were reflected in an order entered on January 9, 2018.

Upon being informed by a child care agency that the circuit court had ordered this visitation, the petitioners filed a combined motion to intervene, to be recognized as persons entitled to notice and the opportunity to be heard, and to prohibit the visitation. The circuit court held a hearing on the petitioners' motion on February 26, 2018, and, by order entered on March 6, 2018, the court granted the petitioners' motion to intervene and

---

[5]The exact nature of the evidence offered at the January 2018 hearing is unclear to this Court because a transcript was not included in the appendix record.

recognized them as persons entitled to notice. However, the circuit court refused to stop the respondents' visitation.

On March 13, 2018, the petitioners filed the instant petition for a writ of prohibition. This Court granted a stay of the January 9, 2018, visitation order pending consideration of the petition, and issued a rule to show cause. Having now received briefs and oral argument, this matter is ready for decision.[6]

## II. Standard for Issuance of Writ of Prohibition

A "writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers." W.Va. Code § 53-1-1 (1923); *accord* Syl. Pt. 2, in part, *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977) ("A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers."). To evaluate whether a lower court has acted in excess of its legitimate powers, we consider the following factors:

---

[6]On April 9, 2018, this Court affirmed the circuit court's order terminating the father's parental rights. *In re T.C.-1*, No. 17-0764, 2018 WL 1719537 (W.Va. Apr. 9, 2018) (memorandum decision).

4

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996). With these principles in mind, we proceed to determine whether a writ of prohibition should issue.

### III. Discussion

The petitioners contend that the circuit court exceeded its legitimate powers and committed clear error as a matter of law by granting the respondents' request for visitation without first ensuring that the petitioners were given notice and a meaningful opportunity to be heard on the issue, as required by West Virginia Code § 49-4-601(h) (2015).[7] Having parented T.C. for three years and being the designated preadoptive parents,

---

[7]This statutory provision is discussed more fully, infra.

5

the petitioners argue that they are in the best position to know the child's needs. The petitioners report that they have serious concerns about the child having visitation with the respondents.[8] Although the circuit court afforded the petitioners a hearing on their motion on February 26, 2018, the petitioners argue that they were still denied a "meaningful" opportunity to be heard on the respondents' motion because they were not informed of the evidence presented during the January 2, 2018, hearing and were not permitted to question the witnesses who testified at that earlier hearing. The DHHR and guardian ad litem have filed briefs with this Court in support of the petitioners' arguments.

The respondents assert that because the petitioners did not have custody of the child prior to the initiation of the abuse and neglect proceedings, the applicable law does not require that they be given an opportunity to respond to the motion or question witnesses regarding the motion. The respondents argue that pursuant to *In re Jonathan G.*, 198 W.Va.

---

[8]The petitioners aver that the respondents may have attended one of the child's birthday parties, but that was their only contact with the child in the three-year period since the child's removal from T.B.'s home. The petitioners believe it is not in the child's best interests to force him to visit with people whom he does not know. They are also concerned that allowing this grandparent visitation could open the door for such visitation after they adopt T.C., which they do not believe is in his best interests. The guardian ad litem reports that there is evidence showing that the biological father resides in respondent T.B.'s home, and that the father has a history of domestic violence, including a recent episode resulting in his arrest. The guardian ad litem is concerned that the respondents may be seeking visitation and custody in an attempt to give the father post-termination contact with the child. However, the merits of granting visitation are beyond the scope of this petition for a writ of prohibition, which is premised upon a lack of notice and opportunity to be heard.

716, 482 S.E.2d 893 (1996),[9] the level and type of participation that foster parents may be given is within the discretion of the circuit court; that the court herein did not abuse its discretion; and that, having been allowed to intervene, the petitioners have the alternate remedy of a direct appeal. Finally, the respondents assert that they could not have served the petitioners with their motion because they had no access to the confidential court file and, at that time, did not know the petitioners' full names and address.

Our analysis begins with the statutory provision addressing the "right to be heard" in an abuse and neglect case, West Virginia Code § 49-4-601(h), which provides as follows:

> **Right to be heard.** – In any proceeding pursuant to this article, the party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses. *Foster parents, preadoptive parents, and relative caregivers shall also have a meaningful opportunity to be heard.*

*Id.* (italics added). Through this statute, the Legislature has provided a clear mandate that foster parents, preadoptive parents, and relative caregivers "shall . . . have a meaningful opportunity to be heard" in the course of an abuse and neglect case. It is well-established that "[t]he word 'shall,' in the absence of language in the statute showing a contrary intent

---

[9]*Jonathan G.* was decided under the prior version of the statute that was then-codified at W.Va. Code § 49-6-2(c) (1996).

on the part of the legislature, should be afforded a mandatory connotation." Syl. Pt. 2, *Terry v. Sencindiver*, 153 W.Va. 651, 171 S.E.2d 480 (1969). The critical question, however, is delineating the parameters of what it means "to be heard."

As this Court has previously discussed, West Virginia Code § 49-4-601(h) establishes a "two-tiered framework." *State ex rel. R.H. v. Bloom*, No. 17-0002, 2017 WL 1788946, *3 (W.Va. May 5, 2017) (memorandum decision). Parties having "custodial or other parental rights or responsibilities" are entitled to *both* "a meaningful opportunity to be heard" *and* "the opportunity to testify and to present and cross-examine witnesses." *See* W.Va. Code § 49-4-601(h). In contrast, however, "[f]oster parents, preadoptive parents, and relative caregivers" are only granted the right to "a meaningful opportunity to be heard." *See id.* Moreover, for purposes of this statute, the term "custodial" refers to a person who became a child's custodian[10] "*prior* to the initiation of the abuse and neglect proceedings[.]" *Jonathan G.*, 198 W.Va. at 727, 482 S.E.2d at 904 (emphasis added).

---

[10]A "custodian" of the child is "a person who has or shares actual physical possession or care and custody of a child, regardless of whether that person has been granted custody of the child by any contract or agreement." W.Va. Code § 49-1-204 (2015). A custodian is a party to the abuse and neglect case who is served with a copy of the petition and has the right to counsel. *See* W.Va. Code § 49-4-601(e) (service of petition and notice of hearing); § 49-4-601(f)(1) (right to counsel). Unless the circuit court determines that the facts and circumstances warrant granting intervener status to a person who obtains physical custody of a child after the filing of the abuse and neglect case, that person is not a party litigant in the case. *Accord*, R. 3(o), R. Proc. Child Abuse and Neglect (identifying foster parents, preadoptive parents, and relative caregivers as being "persons other than parties" in abuse and neglect case).

Thus, under this two-tiered framework, for a person "to qualify as a custodian under § 49-4-601(h) where he would have the right to be heard, testify, and call witnesses in the abuse and neglect proceedings, he must have held custodial rights to the children prior to the initiation of the abuse and neglect petition." *R.H.*, 2017 WL 1788946 at *3 (discussing *Jonathan G.*, 198 W.Va. at 727, 482 S.E.2d at 904). A person "who obtains physical custody *after* the initiation of abuse and neglect proceedings–such as a foster parent–does not enjoy the same statutory right of participation as is extended to parents and pre-petition custodians." *Id.* (relying upon *Jonathan G.*, 198 W.Va. at 729, 482 S.E.2d at 906). In *R.H.*, we concluded that a grandfather who did not have a pre-petition custodianship of two of his grandchildren could not call and question witnesses–but because the children were placed in his care during the abuse and neglect proceeding, he did have the right to be heard regarding the children's best interests. *See R.H.*, 2017 WL 1788946 at *3-4. We recently reiterated these same points in *In re D.C.*, No. 17-0770, 2018 WL 1040393, *3-4 (W.Va. Feb. 23, 2018) (memorandum decision) (recognizing that person with whom child was placed attendant to abuse and neglect proceeding had less extensive rights under § 49-4-601(h) than pre-petition custodian would have).

The Rules of Procedure for Child Abuse and Neglect further elaborate upon the various times and circumstances when a foster or preadoptive parent has the right to be heard. Specifically, Rule 3(o) expressly defines the phrase "[p]ersons entitled to notice and

9

the right to be heard" to "include the CASA when appointed, *foster parents, preadoptive parents*, or custodial relatives providing care for the child." (emphasis added).[11] Approximately twenty-four individual rules within the Rules of Procedure for Child Abuse and Neglect include provisions that apply to these "persons entitled to notice and the right to be heard." Particularly relevant to the case at bar is Rule 46, which provides, in part, that

> [a]dequate and timely notice of *any motion for modification* [of an order of the court] *shall be given to* the child's counsel, counsel for the child's parent(s) (whose parental right have not been terminated) or custodian, and to the Department, *as well as to other persons entitled to notice and the right to be heard*.

(Emphasis added). Furthermore, the respondents' motion sought more than visitation; respondent A.C. also sought custody. Rules pertaining to permanency planning also require that notice of hearing be provided to the "persons entitled to notice and the right to be heard[,]" including Rule 36a regarding permanency hearings, and Rules 39 and 41 addressing permanent placement review conferences and planning.

Applying this law to the facts before us, it is abundantly clear that the petitioners, as both the foster and preadoptive parents of T.C., were entitled to notice of the respondents' October 27, 2017, motion for custody and visitation of T.C., as well as notice of the January 2, 2018, hearing on this motion. The petitioners are "persons entitled to

---

[11]"CASA" is an abbreviation for Court-Appointed Special Advocate. *See* R. Proc. for Child Abuse and Neglect 3(b) & 52.

10

notice and an opportunity to be heard" pursuant to Rule 3(o), and the respondents' motion sought to modify existing court orders regarding the child's care and permanency planning. Critically, West Virginia Code § 49-4-601(h) required that the petitioners be given a "meaningful opportunity to be heard" on these matters. By ruling on the visitation issue without affording the petitioners notice and the opportunity to be heard, the circuit court exceeded its authority, entitling the petitioners to the writ of prohibition.

The holding in *Kristopher O. v Mazzone*, 227 W.Va. 184, 706 S.E.2d 381 (2011), directly supports our ruling today. In *Kristopher O.*, this Court considered a petition for a writ of prohibition filed by foster parents who had attempted, unsuccessfully, to participate in an abuse and neglect case permanency hearing. The relevant statutory language, which was then-codified at West Virginia Code § 49-6-5a(c) (1998), provided that "[a]ny foster parent, preadoptive parent or relative providing care for the child shall be given notice of and the opportunity to be heard at the permanency hearing provided in this section." This Court declined to address the foster parents' request to intervene as parties in the case, but we nonetheless concluded that the circuit court had exceeded its legitimate powers and violated statutory law by denying the fosters parents the opportunity to be heard in the permanency hearing. *Kristopher O.*, 227 W.Va. at 191, 706 S.E.2d at 388.

Here, although the petitioners were afforded an after-the-fact hearing on February 26, 2018, to present their own motion, they contend that this hearing did not provide them with a "meaningful" opportunity to address the issues in the respondents' motion. They argue that they were not informed of the evidence presented during the January 2, 2018, hearing, and were not permitted to cross-examine the witnesses who testified at the January hearing. We agree with the petitioners, in part. Because they are not T.C.'s biological parents or the pre-petition custodians, the two-tiered format of West Virginia Code § 49-4-601(h) would not have afforded the petitioners the opportunity to call or question witnesses at the January 2018 hearing.[12] Critically, however, they most certainly had a right to be heard on these issues in a meaningful way–and we agree that a lack of information about the respondents' motion deprived the petitioners of a meaningful opportunity to be heard.

We now turn to the respondents' argument that prohibition does not lie because the circuit court acted within its discretion in determining how much involvement the foster parents should have had in this case. They rely upon the "sound discretion of the circuit court" language in syllabus point one of *Jonathan G.*:

> The foster parents' involvement in abuse and neglect proceedings should be separate and distinct from the

---

[12]The January 2018 hearing took place *before* the petitioners moved and were granted permission to intervene.

12

fact-finding portion of the termination proceeding and should be structured for the purpose of providing the circuit court with all pertinent information regarding the child. The level and type of participation in such cases is left to the sound discretion of the circuit court with due consideration of the length of time the child has been cared for by the foster parents and the relationship that has developed. To the extent that this holding is inconsistent with *Bowens v. Maynard*, 174 W.Va. 184, 324 S.E.2d 145 (1984), that decision is hereby modified.

*Jonathan G.*, 198 W.Va. at 719, 482 S.E.2d at 896, syl. pt. 1. We disagree with the respondents' argument. Importantly, *Jonathan G.* involved a factual scenario different from the case sub judice. In that case, the foster parents wanted to participate in the abuse and neglect *disposition* hearing by presenting and cross-examining witnesses on the issue of the termination of the biological parents' rights. *Id.* at 726-27, 482 S.E.2d at 903-04. This raised several concerns, including that two sets of parents would become adversaries litigating over who could raise the child. *Id.* at 729, 482 S.E.2d at 906. Concluding that public policy and the purposes of abuse and neglect proceedings dictate that foster parent participation must have its limits, this Court balanced the interests and directed that the involvement of a foster parent is to be "separate and distinct from the fact-finding portion of the termination proceeding" and "structured for the purpose of providing the circuit court with all pertinent information regarding the child." *Id.* at 719, 482 S.E.2d at 896, syl. pt. 1. This syllabus point remains good law and is entirely consistent with the two-tiered framework of West Virginia Code § 49-4-601(h). However, the foster/preadoptive parents in the case at bar did not ask to call or question witnesses at the biological parents' dispositional hearings. Rather, they

13

simply wanted notice and a meaningful opportunity to be heard about a visitation and custody motion that would directly impact the child who is in their care and whom they plan to adopt, all of which is in accordance with the multidisciplinary treatment team's plan for the child. The holding in *Jonathan G.* indisputably supports that the petitioners should be heard on such matters.[13]

The respondents also argue that they were unable to serve their motion for custody and visitation upon the petitioners because they did not have access to the confidential court file and, at that time, did not know the petitioners' full names and address. While we acknowledge this difficulty, it does not alter our opinion that the writ of prohibition should be granted. Indeed, we are at a loss to understand why neither the DHHR nor the guardian ad litem involved the petitioners in the January 2018 hearing. The respondent A.C. was seeking custody of the child, even though the established permanency plan was for the petitioners to adopt. Moreover, as the long-term foster parents, the petitioners were uniquely situated to know how visitation with the respondents would affect the child. Either the DHHR or the guardian ad litem could have called the petitioners as witnesses at the January

---

[13]Indeed, a grandparent visitation issue is precisely the type of matter that warrants gathering information from a child's full-time caregivers. Pursuant to the Grandparent Visitation Act, when determining whether to grant visitation a court is required to consider several factors, including, inter alia, the relationship between the child and the grandparent; the relationship between the grandparent and the "person with whom the child is residing"; and any other factors relevant to the child's best interests. *See* W.Va. Code § 48-10-502 (2001).

14

2018 hearing, which would have satisfied the requirement that the petitioners be given a "meaningful opportunity to be heard." However, since neither the DHHR nor the guardian ad litem involved the petitioners, it was incumbent upon the respondents, as the moving parties, to ensure that their motion and notice of hearing were properly served on all of the persons who were required to receive notice pursuant to the Rules of Procedure for Child Abuse and Neglect. Lacking the necessary information, the respondents could and should have approached the circuit court for assistance in effectuating the required notice.

## IV. Conclusion

Because the petitioners were not afforded the requisite notice and meaningful opportunity to be heard prior to the circuit court granting visitation to the respondents, the circuit court exceeded its legitimate powers and committed clear error as a matter of law. Accordingly, we grant this petition and prohibit the enforcement of the January 9, 2018, order. Now that both biological parents' rights have been terminated, and the termination of the father's parental rights has been upheld on appeal, the circuit court is directed to take immediate steps to ensure permanency for T.C.

Writ of prohibition granted

15