**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **C.H., E.H., and R.H.**

**No. 21-0462** (Kanawha County 20-JA-305, 20-JA-306, and 20-JA-307)

**MEMORANDUM DECISION**

Petitioner Great-Grandmother A.G., by counsel Scott E. Elswick, appeals the Circuit Court of Kanawha County's May 7, 2021, order denying her permanent placement of C.H., E.H., and R.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Mindy M. Parsley, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Elizabeth G. Kavitz, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that petitioner was not statutorily entitled to intervene in the matter, in not adding her as a party to the proceedings, and in making findings contrary to the grandparent preference statute.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2020, the DHHR filed a child abuse and neglect petition against the parents based upon allegations of drug abuse. Specifically, the DHHR alleged that law enforcement officers were dispatched to a hotel room upon receiving reports of drug activity. The parents and the children were in the hotel room and, upon searching the room, police officers located a box containing scales, spoons, needles, and vials in the toilet tank. Child Protective Services ("CPS") implemented a safety plan wherein petitioner, the children's maternal great-grandmother, agreed to supervise the mother and the children in the great-grandmother's home. However, approximately one week later, the mother was arrested after she attempted to sell heroin, and one of the children was found

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

in the car in the presence of drug paraphernalia at the time of the arrest. CPS removed the children from petitioner's home, at which time they found the mother's accomplice in the attempted heroin sale, a known drug addict, in petitioner's home. At the time of the removal, petitioner claimed that the mother and the children were living in her home; however, law enforcement officers believed the mother and the children had also been residing, without supervision, in a trailer owned by the maternal grandmother.

Ultimately, the circuit court adjudicated the parents as abusing and neglecting parents and eventually terminated their parental rights. The mother appealed the termination of her parental rights, and this Court affirmed the circuit court's dispositional order by memorandum decision. *See In re C.H.*, No. 20-0917, 2021 WL 1550242 (W. Va. Apr. 20, 2021) (memorandum decision).

Petitioner allegedly filed a motion to intervene and sought placement of the children in November of 2020; however, the motion was not properly filed, noticed, or received by the circuit court or the parties. In April of 2021, the circuit court held a hearing on the permanent placement of the children, at which time petitioner was able to raise her motion. In support of her motion, petitioner testified that she had sought placement of the children since the initiation of the proceedings against the parents and called the caseworker ten to fifteen times without response. Petitioner acknowledged that she entered into a protection plan prior to the petition's filing wherein she agreed to supervise the mother and the children. Petitioner explained that she did not intentionally violate the protection order. Rather, petitioner stated that on the date of the mother's arrest, she went to the bathroom and when she exited, the mother and R.H. were already leaving in a car so she could not stop them. Petitioner reported that only fifteen or twenty minutes passed until she received a call from law enforcement officers notifying her that the mother had been arrested. Petitioner also contended that she was called to pick the mother up from the police department and that when she left her home to do so, CPS workers arrived to remove the children from her home based on the violation of the protection plan.

The CPS worker testified that petitioner was not considered to be an appropriate placement for the children because she violated the protection plan and allowed R.H. to be unsupervised by the mother, exposing her to drug abuse and the mother's arrest. The CPS worker further testified that petitioner enabled the mother throughout the proceedings, bailed her out of jail, and repeatedly informed the DHHR workers that the children should be placed with the mother, despite the mother's ongoing substance abuse issues. As such, the DHHR determined that placement with petitioner was not in the children's best interest.

After hearing testimony, the circuit court denied petitioner permanent placement of the children. The circuit court found that petitioner was an inappropriate placement and that her testimony was not credible. The circuit court further found that petitioner essentially slept on her rights and was "way late to the dance." Lastly, the circuit court noted that the children were flourishing in their respective foster placements. Petitioner appeals the circuit court's May 7, 2021, order denying her permanent placement of the children.[2]

---

[2]The parents' parental rights were terminated below. The children were placed in a foster home, and the permanency plan for the children is adoption by the foster family.

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in not naming her as a party and finding that she did not have a statutory right of intervention in the proceedings below. According to petitioner, she was a custodian of the children and, as such, was entitled to notice of the proceedings and the right to be heard. She further argues that if she had been afforded party status, she would have been appointed an attorney that could have assisted her in the process or could have discerned much earlier in the proceeding that she needed to obtain counsel at her own expense. Alternatively, petitioner argues that, had she been given notice and the opportunity to participate in the proceedings, she would have been able to more timely establish that she was an appropriate placement and, thus, the DHHR and guardian likely would not have opposed placement of the children in her home.

Petitioner's involvement in the proceedings is governed by West Virginia Code § 49-4-601(h), which establishes a "two-tiered framework" of the parties who enjoy the procedural due process right of a meaningful opportunity to be heard. *State ex rel. H.S. v. Beane*, 240 W. Va. 643, 647, 814 S.E.2d 660, 664 (2018). Specifically, parties having "custodial or other parental rights or responsibilities" are entitled to both "a meaningful opportunity to be heard" and "the opportunity to testify and to present and cross-examine witnesses." W. Va. Code § 49-4-601(h). Further, we have explained that "[a] person 'who obtains physical custody after the initiation of abuse and neglect proceedings—such as a foster parent—does not enjoy the same statutory right of participation as is extended to parents and pre-petition custodians.'" *Beane*, 240 W. Va. at 648, 814 S.E.2d at 665 (quoting *State ex rel. R.H. v. Bloom*, No. 17-0002, 2017 WL 1788946 at *3 (W. Va. May 5, 2017) (memorandum decision)) (emphasis added). These individuals—foster parents, pre-adoptive parents, and relative caregivers—are entitled to a meaningful opportunity to be heard only and are not entitled to an opportunity to testify and present and cross-examine witnesses. W. Va. Code § 49-4-601(h).

Notably, petitioner cannot be classified as any of those individuals listed above who are entitled to participation rights in a child abuse and neglect case. The record is clear that the children were removed from their parents' care and placed with petitioner under a temporary protection

plan. As noted above, a person who obtains custody of a child after the initiation of proceedings does not enjoy the same statutory right of participation as pre-petition custodians. *Beane*, 240 W. Va. at 648, 814 S.E.2d at 665. Aside from her own self-serving statements, petitioner failed to present any evidence that she was a pre-petition custodian or a relative caregiver as defined by West Virginia Code § 49-4-601(h). To the extent petitioner argues that the circuit court erred in denying her motion to intervene, we find no error. The record is clear that petitioner failed to properly file and notice her motion to intervene, leaving the parties below and the circuit court unaware of her motion until several months after the termination of the parents' parental rights. Although petitioner failed to notice her motion, the circuit court nonetheless considered her motion and allowed petitioner to present evidence and testimony in support of that motion. Given the foregoing, we find that the circuit court did not err in declining to add petitioner as a party to the proceeding or in denying her motion to intervene.

Petitioner next argues that the circuit court made findings "contrary to the grandparent preference" during the proceedings below. According to petitioner, the circuit court made numerous findings regarding the DHHR's investigation, efforts to prevent removal, and placement "without any meaningful participation or even monitoring of the proceedings by . . . [p]etitioner." Petitioner claims that she informed the DHHR of her desire to adopt the children and that a home study of her home should have been ordered by the circuit court. Petitioner argues that she was "assisting significantly" with the children's caretaking and that she should not have been denied placement of the children based on the CPS worker's testimony that she initially enabled the mother, which she denies. She asserts that by not adding her as a party to the matter, coupled with the DHHR's refusal to return her phone calls or investigate her home, "any findings made by [the circuit court] upon the record established to date have been contrary to the applicable statutes, rules and standards."

On this issue, we have previously held that

> [w]hile the grandparent preference statute[3] . . . places a mandatory duty on the West Virginia Department of Health and Human Resources to complete a home study before a child may be placed for adoption with an interested grandparent, "the department shall first consider the [grandparent's] suitability and willingness . . . to adopt the child." There is no statutory requirement that a home study be completed

---

[3]West Virginia Code § 49-4-114(a)(3), the grandparent preference statute, provides as follows:

> For purposes of any placement of a child for adoption by the department, the department shall first consider the suitability and willingness of any known grandparent or grandparents to adopt the child. Once grandparents who are interested in adopting the child have been identified, the department shall conduct a home study evaluation, including home visits and individual interviews by a licensed social worker. If the department determines, based on the home study evaluation, that the grandparents would be suitable adoptive parents, it shall assure that the grandparents are offered the placement of the child prior to the consideration of any other prospective adoptive parents.

in the event that the interested grandparent is found to be an unsuitable adoptive placement and that placement with such grandparent is not in the best interests of the child.

Syl. Pt. 10, *In re L.M.*, 235 W. Va. 436, 774 S.E.2d 517 (2015) (footnote added). In discussing the grandparent preference, this Court noted that "[t]he preference is just that—a preference. It is not absolute . . . the child's best interest remains paramount." *In re K.E.,* 240 W. Va. 220, 225, 809 S.E.2d 531, 536 (2018). Simply stated, "[t]he grandparent preference must be considered in conjunction with our long standing jurisprudence that 'the primary goal in cases involving abuse and neglect . . . must be the health and welfare of the children.'" *In re Hunter H.*, 227 W. Va. 699, 703, 715 S.E.2d 397, 401 (2011) (quoting Syl. Pt. 3, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996)).

At the outset, we reiterate that petitioner failed to demonstrate that she was entitled to be added as a party to the proceedings below. Moreover, petitioner's argument regarding the DHHR's failure to conduct a home study is unavailing given that the DHHR considered placement of the children with petitioner but found her to be an unsuitable placement. As noted above, the DHHR is absolved of its statutory duty to perform a home study if it finds the grandparent is unfit and placement in the home is not in the children's best interests. *In re L.M.*, 235 W. Va. at 438, 774 S.E.2d at 520, Syl. Pt. 10, in part. Here, the evidence established that petitioner violated a temporary protection plan by allowing the mother unsupervised access to the children, resulting in the child R.H. being exposed to a sting operation wherein the mother was arrested for the attempted sale of heroin. Indeed, the child was found with drug paraphernalia within reach of her bare feet. Further, the CPS worker testified that petitioner enabled the mother, despite the mother's rampant drug abuse, yet petitioner argued that the children should be placed with her anyway. As such, petitioner's home clearly was not suitable for the children, and, therefore, the circuit court did not abuse its discretion by not ordering the DHHR to conduct a home study. Moreover, we find no error in the circuit court's determination that placement of the children in the foster family's home was in their best interests given petitioner's inability to pass a home study, as well as the children's bond with the foster family, the length of time they had lived in that home, and their substantial progress while in their care.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 7, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: November 8, 2021

**CONCURRED IN BY**:
Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton