**FILED**

**January 31, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**In re I.R.**

**No. 20-0512** (Kanawha County 19-JA-620)

## MEMORANDUM DECISION

Petitioner Grandmother R.R.,[1] by counsel Richard A. Robb, appeals the Circuit Court of Kanawha County's June 1, 2020 order denying her motion to intervene in the pending abuse and neglect proceeding relating to the child I.R. The West Virginia Department of Human Resources (DHHR), by counsel Patrick Morrisey, S.L. Evans, and James W. Wegman, as well as the child's guardians ad litem James Rudy Martin and Elizabeth G. Kavitz support the circuit court's order.

This Court has considered the parties' briefs, oral arguments, and the record on appeal. We find no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure. We conclude that the circuit court did not err in denying Petitioner's motion to intervene.

## I. Factual and Procedural Background

Soon after the infant I.R. was born in 2019, an abuse and neglect petition was filed against the mother E.R. in October 2019. E.R. is Petitioner's daughter, from whom Petitioner was allegedly estranged for some three years. In November 2019, Petitioner learned from a friend of E.R.'s that I.R. had been born and that DHHR had removed the child from E.R.'s care. The next business day, Petitioner called Child Protective Services (CPS) to ask for placement of I.R. That same day, CPS Worker Austin Blizzard and a trainee conducted a home visit, and according to Petitioner she had ongoing contact with CPS Worker Blizzard until December 4, 2019. Ultimately, CPS Worker Blizzard determined that Petitioner's home was not a proper or suitable placement for I.R.[2]

---

[1] Because this case involves children and sensitive matters, we follow our practice of using initials to refer to the children and the parties. *See* W.Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W.Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Since Petitioner's motion to intervene was denied, the appendix record on appeal does not contain evidence relating to DHHR's evaluation of Petitioner's home, or any other documents relating to the underlying abuse and neglect action. But DHHR represented to the circuit court

More than two months later, on February 18, 2020, Petitioner filed a motion to intervene in the abuse and neglect action.[3] By then, E.R.'s parental rights to I.R. had already been terminated and adoption with foster parents was in process. The circuit court granted Petitioner a hearing on the motion to intervene. During the hearing, the circuit court heard testimony from Petitioner as to her income, housing situation, relationship with E.R. and relationship with I.R. Petitioner testified that she had never seen I.R. and did not have a relationship with him. She also testified that she had not had contact with E.R. for more than three years and assured the circuit court that she would not let E.R. around I.R. if granted placement. When the circuit court suggested that the motion to intervene was untimely because the dispositional order terminating E.R.'s parental rights had been entered before Petitioner's motion to intervene had been filed, Petitioner stated that she was not notified of any proceedings. After Petitioner left the hearing,[4] DHHR represented that Petitioner had been notified of both the adjudicatory hearing and the dispositional hearing by CPS Worker Blizzard.

In the circuit court's order denying Petitioner's motion to intervene, it concluded that (1) intervention was untimely in light of her notice of the ongoing proceedings; (2) intervention was not in the best interests of the child despite their biological relationship; and (3) Petitioner's home was not a proper or suitable placement for the minor child. It is from that order that Petitioner appeals.

## II. Standard of Review

Our appellate review of the order denying Petitioner's motion to intervene is deferential to the circuit court's findings of fact, but de novo as to its conclusion of law:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly

---

that the home was not deemed a proper placement by CPS Worker Blizzard, and the circuit court adopted that finding in its order denying Petitioner's motion to intervene.

[3] Petitioner's motion to intervene also appears to assert claims against DHHR for discrimination. The circuit court clarified for Petitioner that what she filed was a motion to intervene and nothing more, so if she wished to file a lawsuit, she needed to file it separately from the motion.

[4] Due to the Covid-19 pandemic, the hearing on the motion to intervene was conducted by Skype. After the circuit court denied Petitioner's motion to intervene, it instructed her to hang up so that it could continue the remainder of the confidential hearing.

erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.[5]

### III.    Analysis

Petitioner assigns four errors to the circuit court's order denying intervention: (1) the order is in contravention of "applicable law" "allowing willing family members meaningful participation and consideration" in abuse and neglect matters; (2) because she did not have the opportunity to defend against them, the findings that her home was not suitable for placement and that the foster parent placement was in the child's best interests were improper and violated her due process rights; (3) the circuit court did not properly recognize Petitioner's objections because her counsel did not make an appearance until after the hearing; and (4) insufficient attention was paid to public policies regarding grandparents.

Petitioner's arguments are premised on a presumed right to participate in the abuse and neglect proceedings as a party or to be provided meaningful opportunity to be heard. In so presuming, Petitioner argues vague and brief notions of standing in loco parentis to the child, grandparent rights, and rights of relative caregivers without pointing us to what Petitioner believes to be the relevant provisions to support those arguments. West Virginia Code § 49-4-601(e) and (h) (2019) set forth the standards applicable here as to who is entitled to notice and the opportunity to be heard.

Specifically, § 49-4-601(e)(1) and (2) provides that "[t]he petition and notice of the hearing shall be served upon both parents and any other guardian, custodian, or person standing *in loco parentis* giving to those persons at least five days' actual notice of a preliminary hearing and at least ten days' notice of any other hearing" and that "[n]otice shall be given to the department, any foster or preadoptive parent, and any relative providing care for the child." West Virginia Code § 49-4-601(h) affords the opportunity to be heard as follows:

> In any proceeding pursuant to this article, the party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses. Foster parents, preadoptive parents, and relative caregivers shall also have a meaningful opportunity to be heard.

As we have previously explained, the two-tier framework of this statute affords an extended statutory right to participation only to parents or pre-petition custodians: "a person 'who obtains physical custody *after* the initiation of abuse and neglect proceedings–such as a foster parent–does

---

[5] Syl. Pt. 1, *In re Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

not enjoy the same statutory right of participation as is extended to parents and pre-petition custodians.'"[6] Those in the second tier granted the meaningful opportunity to be heard are foster parents, preadoptive parents, and relative caregivers.[7]

Importantly, in advancing the position that she was entitled to intervene in the proceedings, or that she was entitled to notice and opportunity to be heard, Petitioner has not attempted to couch her argument in the terms of West Virginia Code § 49-4-601(e) or (h). Rather, she asserts generally that because she is a grandparent willing to take custody of the child, she has a right to intervene and would stand in loco parentis to the child. In doing so, she argues that she is entitled to the same constitutional rights as the parent of a child, or otherwise makes conclusions that are not supported by the facts. Specifically, she ignores that she cannot stand in loco parentis to a child she has never met and to whom she has no parental responsibilities.[8]

Nevertheless, we analyze Petitioner's argument under the lens of West Virginia Code § 49-4-601(e) and (h). As to subsection (e), Petitioner is neither the department, a foster or preadoptive parent, nor a relative providing care for the child because she has never cared for or met the child and has no documentation purporting to make her responsible for providing care to the child. For that reason, she is not a person entitled to notice under this provision.

Turning to the first tier of subsection (h), those "having custodial or other parental rights or responsibilities" are afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses. So, the question is whether Petitioner qualifies as a person "having custodial or other parental rights or responsibilities." We have previously clarified that the "the 'custody' discussed in this context refers to a person who became a child's custodian '*prior* to the initiation of abuse and neglect proceedings[.]'"[9]

---

[6] *State ex rel. H.S. v. Beane*, 240 W. Va. 643, 648, 814 S.E.2d 660, 665 (2018) (emphasis in original).

[7] *Id.* at 647, 814 S.E.2d at 664:

Parties having "custodial or other parental rights or responsibilities" are entitled to *both* "a meaningful opportunity to be heard" *and* "the opportunity to testify and to present and cross-examine witnesses." *See* W. Va. Code § 49-4-601(h). In contrast, however, "[f]oster parents, preadoptive parents, and relative caregivers" are only granted the right to "a meaningful opportunity to be heard."

[8] *See* In Loco Parentis, BLACK'S LAW DICTIONARY 11th ed. 2019 ("[Latin 'in the place of a parent'] . . . Of, relating to, or acting as a temporary guardian or caretaker of a child, taking on all or some of the responsibilities of a parent.")

[9] *State ex rel. R.H. v. Bloom*, No 17-002, 2017 WL 1788946 at *3 (May 5, 2017) (memorandum decision) (citing *In re Jonathan G.*, 198 W.Va. 716, 727, 482 S.E.2d 893, 904 (1996)) (emphasis in original).

In *State ex rel. R.H.*, we examined the rights of a grandfather who claimed to be a "custodian" both before and after the filing of the petition and who sought intervenor status on that basis.[10] In concluding that petitioner had not shown a clear legal right to intervene,[11] the Court noted that "[a]t most, we can determine that the children were left at the petitioner's home for a three-week period before the abuse and neglect petition was filed."[12] Comparing the facts of that case to this one, it is plain that Petitioner is not a pre-petition custodian entitled to the opportunity to testify and to present and cross-examine witnesses in addition to the opportunity to be heard because she has never cared for or met the child. Likewise, Petitioner's contentions that she has abstract "parental responsibilities" as a grandmother are insufficient to require intervention as of right under this statute. For those reasons, Petitioner was not entitled to intervene in the abuse and neglect action, and the circuit court did not err in denying her motion for intervenor status.

This Court has clarified, however, that "the right to be heard afforded under West Virginia Code § 49-4-601(h) exists and operates independently of the rights and privileges afforded to intervening parties. Foster parents and others designated in the statute have a right to be heard without the necessity of requesting intervenor status."[13] So, whether Petitioner may be afforded meaningful opportunity to be heard under the second tier of West Virginia Code § 49-4-601(h) is a separate question.[14] Under that portion of the statute, to be afforded the right to be heard, Petitioner must establish that she is either a foster parent, preadoptive parent, or a relative caregiver. Petitioner is not a foster parent, is not a preadoptive parent, and conceded at oral argument that she is not a relative caregiver under the statute. Based on the plain language of the statute as applied to the facts of this case, Petitioner is entitled to no relief insofar as she contends she was not afforded notice or the opportunity to be heard and had a right to it.

---

[10] *Id.* at *3.

[11] The petitioner in *R.H.* sought a writ of mandamus to intervene in the proceedings, but the fact pattern is nevertheless instructive given that the petitioner in that case was a grandparent as well. *See id.*

[12] *Id.* at *4.

[13] *State ex rel. C.H. v. Faircloth*, 240 W. Va. 729, 737, 815 S.E.2d 540, 548 (2018).

[14] We have discussed that implicit in the "right to be heard" is notice of proceedings:

> Our precedent makes clear, however, that whatever *evidentiary* limitations are placed on such parties, a meaningful opportunity to be heard includes notice of and the right to be heard on all proceedings insofar as "pertinent information regarding the child" is relevant to the circuit court's consideration. *See* Syl. Pt. 1, *Jonathan G.*, 198 W. Va. 716, 482 S.E.2d 893; *Kristopher O.*, 227 W. Va. 184, 706 S.E.2d 381; *Beane*, 2018 WL 2467794.

*State ex rel. C.H.* 240 W. Va. at 739, 815 S.E.2d at 550.

Recently, in *In re P.F.*, we examined a similar issue, where a grandparent sought to intervene in the abuse and neglect proceedings, and we concluded that she was not entitled to notice and opportunity to be heard under either tier of West Virginia Code § 49-4-601(h).[15] We explained that "this is an appeal of the circuit court's order denying Grandmother's motion to intervene in an abuse and neglect proceeding, and the plain language of the grandparent preference statute [W. Va. Code § 49-4-114(a)(3)] does not give a grandparent *the right* to intervene in an abuse and neglect proceeding."[16] Despite her inability to intervene, the petitioner in that case invoked the grandparent preference relying on an approved home study, and we concluded that the matter needed to be remanded for consideration of whether placement with the Grandmother was in the child's best interests.[17] Unlike *P.F.*, there does not appear to be a secondary challenge here to the refusal to award custody to Petitioner under the grandparent preference statute. In fact, Petitioner did not cite the statute in her brief or otherwise discuss its implications at all. And Petitioner here has not been deemed a suitable placement option and the circuit court has already determined that the child's current placement is in his best interests.[18] Petitioner has not given us any cause to second guess those determinations.

Instead of arguing for application of the grandparent preference statute, Petitioner's arguments are derivative of the arguments made regarding her purported right to notice and to be provided meaningful opportunity to be heard. Petitioner relies on "various references throughout Chapter 49" that relatives and grandparents have rights to participate, or other indistinct rights protected outside the confines of West Virginia Code § 49-4-601. Given that Petitioner is unable to point us to *any* provision or case law under which to analyze her argument, we find it warrants no consideration from this Court. We refuse the invitation to scour the entirety of Chapter 49 and the jurisprudence resulting therefrom to prop up Petitioner's specter of an argument. As this Court has discussed with respect to skeletal arguments, "[a]lthough we liberally construe briefs in determining issues presented for review, issues which are . . . mentioned only in passing but are not supported with pertinent authority, are not considered on appeal."[19] And "appellate courts

---

[15] 243 W. Va. 569, 574, 848 S.E.2d 826, 831 (2020).

[16] *Id.* (emphasis in original).

[17] *Id.* at 576, 848 S.E.2d at 833.

[18] *See* syl. pt. 10, in part, *In re L.M.*, 235 W. Va. 436, 774 S.E.2d 517 (2015) ("There is no statutory requirement that a home study be completed in the event that the interested grandparent is found to be an unsuitable adoptive placement and that placement with such grandparent is not in the best interests of the child."). Underscoring the propriety of these conclusions is Petitioner's motion to this Court seeking permission for E.R., whose rights to I.R. have been terminated, to intervene in this appeal. In that motion, Petitioner avers that contrary to her testimony to the circuit court below, she and E.R. have never been estranged and their interests are aligned in seeking custody of I.R.

[19] *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996).

6

frequently refused to address issues that appellants . . . fail to develop in their brief."[20]  For those reasons, we decline to address omnibus "grandparent rights" in such amorphous terms and without sufficient briefing.

The arguments advanced in Petitioner's brief to the effect that she has due process rights to confront evidence that her home was not a suitable placement are similarly feeble. Petitioner's entire argument in this regard is derived from a single case analyzing the constitutional rights of a parent.  We have not been presented with any valid argument or authority to reverse the circuit court's order on that basis and find the circuit court's determination that I.R.'s current foster placement is in the child's best interests is supportable on the facts before us.

Finally, Petitioner argues that the circuit court erred in entering its order denying her motion to intervene without her signature, and without appropriately considering Petitioner's objections to the order under Trial Court Rule 24.01.  Trial Court Rule 24.01 outlines the procedure to be followed for the proposal and entry of orders: subsection (b) states the procedure for a preferred method of entry of orders (that all orders "bear[] the signature of all counsel and unrepresented *parties*") and an alternate method (where counsel prepares a proposed order and submits a copy to opposing counsel with a notice to note objections and exceptions to the order). Subsection (d) then requires that counsel with objections to a proposed order has an affirmative duty to confer with counsel who prepared the order in effort to reach a resolution, and, if no resolution is achieved, to submit a second proposed order for the court's consideration.  First, Petitioner is not a "party."  Second, the guardian ad litem submitted a proposed order on May 13, 2020, and Petitioner's counsel filed objections with the court two days later.  Petitioner never contacted the guardian ad litem to seek a resolution, nor did she submit a second proposed order for the court's consideration. Seventeen days after receiving the proposed order from the guardian ad litem and fifteen days after receiving Petitioner's objections to the order, the circuit court entered its order denying her motion to intervene.  We find no error in the procedures employed by the circuit court in entering its order.

For the reasons set forth above, we affirm the June 1, 2020 order of the Circuit Court of Kanawha County.

Affirmed.

**ISSUED:** January 31, 2022

**CONCURRED IN BY:**
Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton

---

[20] *State v. Lilly*, 194 W. Va. 595, 605 n.16, 461 S.E.2d 101, 111 n.16 (1995).