**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **J.W.**

**No. 24-147** (Kanawha County 22-JA-341)

## MEMORANDUM DECISION

Petitioners C.K. and L.K.,[1] the child's kinship placement below, appeal the Circuit Court of Kanawha County's February 14, 2024, order denying their renewed motion to intervene and for permanent custody of J.W., arguing that they were entitled to intervention as a matter of right and were denied their opportunity to be heard.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In August 2022, the DHS filed a petition against the parents alleging that they abused and neglected the child by virtue of substance abuse and lack of suitable housing.[3] By order entered on August 11, 2022, the circuit court granted the DHS custody of the child. According to the record, after receiving legal custody of the child, the DHS placed the child in the physical custody of the petitioners, the child's maternal aunt and uncle, where the child remained throughout these proceedings. At the preliminary hearing, the court ordered the DHS to provide reunification services to the parents.

---

[1] The petitioner appears by counsel Joseph H. Spano Jr. The West Virginia Department of Human Services appears by counsel Attorney General John B. McCuskey and Assistant Attorney General James Wegman. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. Counsel Jennifer R. Victor appears as the child's guardian ad litem ("guardian"). Respondent Mother appears by counsel Barb Baxter. Respondent Father appears by counsel Adam Campbell.

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] The proceedings below concerned additional children who are not at issue in this appeal.

At an adjudicatory hearing in September 2022, the parents stipulated to the allegations against them. The circuit court adjudicated the parents of neglecting the child and ordered them to continue with services. After a period of compliance, the circuit court granted the parents post-adjudicatory improvement periods in November 2022. The parents' compliance continued over the next several months, with the parents obtaining visitation with the child in January 2023. However, the record shows that, at some points, the parents suffered lapses in their participation. In March 2023, the petitioners filed a motion to intervene, alleging that both parents "continue[d] to fail drug screens" and that the father's family members "have continued to harass" them, among other allegations. The petitioners asserted that the child had thrived in their care for eight months and that "the best interest of the child is to continue and forever live" with them. During a hearing in April 2023, the court granted the petitioners' motion to intervene. Following this hearing, the parents' compliance with services continued. In August 2023, the court reconsidered its prior order granting the petitioners' motion to intervene, at which point the court "reversed and set aside [the prior order] as incorrectly granted." However, the court permitted the petitioners' counsel to monitor the proceedings and renew their motion to intervene "at the appropriate time." It does not appear from the record before this Court that the petitioners objected to the court's reversal of its prior order or its ruling that their counsel could continue monitoring the proceedings. Finally, as a result of their compliance and improvement, the court granted the parents unsupervised overnight visits with the child. Shortly after this hearing, upon evidence that overnight visits had gone well, the court ordered the DHS to increase unsupervised and overnight visits with the parents at its discretion "with the goal of reunification."

In December 2023, the petitioners renewed their motion to intervene, citing certain statutes and holdings from this Court addressing situations in which a child has been in foster care for fifteen of the most recent twenty-two months. Shortly after the petitioners filed this motion, the DHS reported that the parents remained in compliance with services and overnight visits went well. Further, the mother had recently given birth to another child, and the DHS did not remove this child because it had no concerns about the parents. As such, the DHS recommended that J.W. be returned to the parents and the matter be dismissed with reunification services to continue for ninety days.

On December 12, 2023, the court held a hearing, during which both the DHS and the guardian moved to reunify the child with the parents and dismiss the matter. After acknowledging the petitioners' pending motion, the guardian noted her concern that the petitioners were "hostile to reunification." The guardian further objected to the motion, because she did not "believe there is any responsible cause to delay reunification of this family now that the parents have successfully completed their improvement period[s] and have done everything that we have asked of them." The court permitted the petitioners' counsel to argue in support of the motion to intervene at length. Ultimately, the court denied the petitioners a full evidentiary hearing on their motion to intervene and denied the motion. Of particular note, the court dismissed the petitioner's reliance on certain statutes limiting the amount of time a child may spend in foster care by finding that "the child has not been in foster care" and was, instead, placed with relatives. The court further ordered that the child be reunified with the parents and dismissed the matter with ninety days of services for the parents. The petitioners appeal from the dispositional order.

We have previously established the following:

A circuit court's decision on an individual's motion for permissive intervention in a child abuse and neglect proceeding pursuant to West Virginia Code § 49-4-601(h) (2019) is reviewed under a two-part standard of review. We review de novo whether the individual seeking permissive intervention was afforded "a meaningful opportunity to be heard" as required by West Virginia Code § 49-4-601(h), and we review for an abuse of discretion a circuit court's decision regarding the "level and type of participation" afforded to individuals seeking permissive intervention, i.e., foster parents, pre-adoptive parents, and relative caregivers, pursuant to Syllabus point 4, in part, *State ex rel. C.H. v. Faircloth*, 240 W. Va. 729, 815 S.E.2d 540 (2018).

Syl. Pt. 1, *In re H.W.*, 247 W. Va. 109, 875 S.E.2d 247 (2022). We further note that "[f]oster parents are entitled to intervention as a matter of right when the time limitations contained in West Virginia Code § 49-4-605[(a)(1)] (2017) and/or West Virginia Code § 49-4-610(9) (2015) are implicated, suggesting that termination of parental rights is imminent and/or statutorily required." Syl. Pt. 2, *In re H.W.*, 247 W. Va. 109, 875 S.E.2d 247 (2022) (quoting *Faircloth*, 240 W. Va. at 732, 815 S.E.2d at 542, Syl. Pt. 7).

The petitioners first argue that they were entitled to intervention as a matter of right because the time limitations set forth above were exhausted. We note, however, that the petitioner's extensive reliance on our holding in *Faircloth* is misplaced, as the statutes referenced therein explicitly concern a child's placement in *foster care*. *See* W. Va. Code § 49-4-605(a)(1) (requiring the DHS to "file or join in a petition or otherwise seek a ruling in any pending proceeding to terminate parental rights" when "a child has been in foster care for 15 of the most recent 22 months" based on certain calculations); *id.* § 610(9) (directing that "no combination of any improvement periods or extensions thereto may cause a child to be in foster care more than fifteen months of the most recent twenty-two months" absent certain exceptions). As set forth in West Virginia Code § 49-1-206, "'[f]oster family home' means a private residence which is used for the care on a residential basis of no more than six children *who are unrelated, by blood, marriage, or adoption, to any adult member of the household*." (Emphasis added). Further, "'[f]oster parent' means a person with whom the department has placed a child and who has been certified by the department, a child placing agency, or another agent of the department to provide foster care." *Id.* That statute goes on to define "[k]inship placement" as "the placement of the child with a relative of the child, as defined herein, or a placement of a child with a fictive kin, as defined herein," and defines "[k]inship parent" as "a person with whom the department has placed a child to provide a kinship placement." *Id.* Given the requirement that a foster family home include children that are unrelated to any adult member of the household and the requirement that a kinship placement be a relative of the child, it is clear that the petitioners herein were the child's kinship parents and their custody was pursuant to a kinship placement. Accordingly, they are entitled to no relief in regard to our prior holding in Syllabus Point 7 of *Faircloth* concerning foster care.

We further note that because the petitioners were not pre-petition custodians, they were also not entitled to intervention as a matter of right under West Virginia Code § 49-4-601(h). We have explained that West Virginia Code § 49-4-601(h) creates a "two-tiered framework." *State ex rel. R.H. v. Bloom*, No. 17-0002, 2017 WL 1788946, *3 (W. Va. May 5, 2017) (memorandum

decision). "Parties having 'custodial or other parental rights or responsibilities' are entitled to both 'a meaningful opportunity to be heard' *and* 'the opportunity to testify and to present and cross-examine witnesses.'" *State ex rel. H.S. v. Beane*, 240 W. Va. 643, 647, 814 S.E.2d 660, 664 (2018) (citing W. Va. Code § 49-4-601(h)). "In contrast, however, '[f]oster parents, preadoptive parents, and relative caregivers' are only granted the right to 'a meaningful opportunity to be heard.'" *Id.* Critically, "for purposes of this statute, the term 'custodial' refers to a person who became a child's custodian '*prior* to the initiation of the abuse and neglect proceedings[.]'" *Id.* (quoting *In re Jonathan G.*, 198 W. Va. 716, 727, 482 S.E.2d 893, 904 (1996) (modified on other grounds by *Faircloth*, 240 W. Va. 729, 815 S.E.2d 540). As set forth above, the record establishes that the petitioners were granted custody of the child attendant to the DHS's removal. Accordingly, they are entitled to no relief. *See In re H.W.*, 247 W. Va. at 120, 875 S.E.2d at 258 ("Thus, because the Foster Parents did not, prior to the institution of the instant abuse and neglect proceeding, have 'custodial . . . rights or responsibilities to the child,' W. Va. Code § 49-4-601(h), they were not entitled to intervention as a matter of right in these proceedings.").

As to the petitioners' request to intervene under West Virginia Code § 49-4-601(h), we find that they were afforded a meaningful opportunity to be heard. On appeal, the petitioners assert that they were denied this right because the circuit court did not hold a full evidentiary hearing on their renewed motion to intervene.[4] However, the petitioners ignore the fact that, after the circuit court reversed and set aside its original order granting them intervenor status, it permitted their counsel to monitor the entirety of the remaining proceedings. We have previously found that this level of participation was not in error. *See In re H.W.*, 247 W. Va. at 119, 875 S.E.2d at 257 ("We find no error in the circuit court's decision to deny the Foster Parents' intervention motion while permitting their counsel to monitor and participate in the ongoing child abuse and neglect proceedings involving H.W."). Further, it is clear that the circuit court permitted the petitioners the opportunity to argue their renewed motion to intervene, thus satisfying their right to be heard under West Virginia Code § 49-4-601(h). Again, we must stress that the petitioners were not entitled to testify or present and cross-examine witnesses because they were not the child's pre-petition custodians. Accordingly, the petitioners were "subject to discretionary limitations on the level and type of participation as determined by the circuit court." *Faircloth*, 240 W. Va. at 732, 815 S.E.2d at 542, Syl. Pt. 4, in part. We conclude that the circuit court did not abuse this discretion.

---

[4] The petitioners also argue that the circuit court violated their right to be heard by refusing to let them address their ultimate request for permanent placement of the child. In this regard, we note the following:

> [T]o the extent the Foster Parents argue that the circuit court erred by not terminating the Mother's parental rights, such dispositional decision is not properly before the Court. Because the Foster Parents were not granted intervenor status, their ability to bring the instant appeal is limited to their role in the proceedings below as foster parents who requested, but were denied, intervenor status.

*In re H.W.*, 247 W. Va. at 120, 875 S.E.2d at 258 (citations omitted). This also applies to the petitioners' arguments on appeal concerning the circuit court's award and administration of the parents' improvement periods. As such, we decline to address these arguments.

4

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 14, 2024, order is hereby affirmed.

Affirmed.

**ISSUED**: May 6, 2025

**CONCURRED IN BY**:

Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Charles S. Trump IV

**DISSENTING:**

Justice C. Haley Bunn

Bunn, Justice, dissenting:

I dissent to the majority's resolution of this case. I would have set this case for oral argument to thoroughly address the errors alleged in this appeal. Having reviewed the parties' briefs and the issues raised therein, I believe a formal opinion of this Court was warranted, not a memorandum decision. Accordingly, I respectfully dissent.